## IN THE COURT OF APPEALS OF IOWA

No. 15-0059
Filed February 10, 2016

IN RE THE MARRIAGE OF NANCY D'ANN BROWN
AND TERRY LEE BROWN

Upon the Petition of
**NANCY D'ANN BROWN,**
　　　　　Petitioner-Appellee,

**And Concerning**
**TERRY LEE BROWN,**
　　　　　Respondent-Appellant.
_____

　　　　Appeal from the Iowa District Court for Greene County, Joel E. Swanson,

Judge.

　　　　A husband appeals the spousal support provisions in the parties

dissolution decree. **AFFIRMED AS MODIFIED.**

　　　　Vicki R. Copeland of Wilcox, Polking, Gerken, Schwarzkopf, Copeland

& Williams, P.C., Jefferson, for appellant.

　　　　Scot L. Bauermeister of Fitzgibbons Law Firm, L.L.C., Estherville, for

appellee.

　　　　Considered by Potterfield, P.J., and Doyle and Tabor, JJ.  Danilson, C.J.

takes no part.

**POTTERFIELD, Presiding Judge.**

A husband appeals the spousal support provisions in the parties' dissolution decree.  Contrary to the husband's assertion, the district court did not explicitly rely on the opinion of an expert in determining the husband's income, and on our de novo review, we make our own determination of his income.  The court properly ordered the husband to pay spousal support of $3500 per month.  We modify the dissolution decree to reduce the husband's spousal support obligation to $1500 per month when the husband turns seventy years old.  The husband is responsible to pay $2000 toward the wife's appellate attorney fees.

## I. Background Facts & Proceedings

Terry and Nancy Brown were married in 1969.  They are the parents of four adult children who are not affected by the economic provisions of the parties' dissolution decree.

After the parties married they moved to Chicago, Illinois, where Nancy worked as a dental assistant while Terry attended the Illinois College of Optometry.  Terry completed his degree in 1973, and the parties purchased an optometry practice in Jefferson, Iowa.  For the most part, Nancy did not work outside the home after the parties moved back to Iowa.  She was the primary caretaker of the parties' four children.

Terry was successful in his optometry business.  In addition to owning 100% of the business in Jefferson, the parties purchased 100% of an optometry practice in Osceola, 65.5% of practices in Denison and Ida Grove, and 51% of practices in Grinnell, Manchester, and Carroll.  They borrowed money to make these purchases and are still making payments on the debt.  The parties also

own 100% of the practice buildings in Jefferson, Denison, Ida Grove, Osceola, and Carroll, and 50% of the building in Grinnell. Again, they borrowed money to make the purchases and are still paying for the buildings.[1] In 2006 the parties purchased Marcella Optical, P.C., a company in Cedar Rapids which surfaced and finished optometric lenses, and have debt associated with the purchase. They sold the use of Marcella's client list and equipment for a period of five years, ending in January 2015.

Terry works at the optometric practices in Jefferson and Osceola. The remainder of the interest in the other practices is owned by optometrists who work at those practices. The practices in Jefferson and Denison are organized as C corporations, while the other practices are S corporations. Terry created a sole proprietorship, T.L. Brown Management, to oversee the management of the practices. The parties' share of the profits from the optometry practices is paid to T.L. Brown Management,[2] which has two employees—a manager and a bookkeeper. For the optometry practices that are S corporations, the profits are shown on the parties' tax returns as distributions from the practices. The parties also receive rental income from the practice buildings they own. During the marriage Nancy received $1000 per month from T.L. Brown Management.

Terry inherited 140 acres of farmland, which had about 120 acres of tillable ground. He anticipated receiving rental income from the farmland. Before he inherited the farmland he received $1000 per month from the rental income as

---

[1] The parties have debt associated with the purchase of all of the buildings, except the building in Jefferson.

[2] The optometry practices not solely owned by the parties also pay a monthly management fee to T.L. Brown Management.

a gift from his mother. Farm rent in Iowa is generally between $250 to $350 per acre. At $250 per acre for 120 acres, Terry could receive $30,000 per year in farm rental income.

Nancy filed a petition for dissolution of marriage on March 7, 2014. The parties entered into a stipulation on all issues except spousal support. The parties agreed Nancy would be awarded assets worth $712,058. Nancy was responsible for any credit card debt solely in her name. Terry was awarded the interest in the optometry practices, the practice buildings, and the other marital assets.[3] He also agreed to assume the parties' debts.[4] The parties agreed to sell the marital residence and divide the proceeds.[5] They agreed T.L. Brown Management would continue to pay Nancy $1000 per month and the premiums for her health insurance and long-term care insurance until February 28, 2016. Terry agreed to pay $5000 for Nancy's trial attorney fees.

The dissolution hearing commenced on December 4, 2014. Nancy presented the testimony of James Nally, a certified public accountant and the vice-president of BCC Advisors, a company that performed business valuations. Nally looked at the parties' financial information and determined that over a five-year period Terry earned an average of $168,626 per year, or $14,052 per month. Nally considered income from the optometry practices, interest income,

---

[3] The district court did not make a finding concerning the value of the assets awarded to Terry under the parties' stipulation. From our review of the values used by the parties on the pretrial stipulation, Terry was awarded assets worth around $2.14 million, which does not include the farmland he inherited.
[4] The district court found the parties had total debts of over $1,220,382.
[5] The parties agreed Terry would pay Nancy $75,000. After the house was sold, Terry would be reimbursed $75,000 and the remaining profits, if any, would be divided equally.

dividends, rental income, and business losses. He did not consider farm rental income.

Nancy was sixty-three years old at the time of the dissolution hearing. She received $525 each month in Social Security benefits, and at the time the dissolution was finalized would receive $1290.50 each month. Under the parties' stipulation, Nancy received $1000 each month from T.L. Brown Management until February 28, 2016. Nancy has helped a friend at her fabric store a few times and received about fifty dollars per year, which was paid to her either in cash or fabric. Nancy testified she hoped to be able to get part-time employment at the fabric store, but no specific arrangements had been made. She also testified she hoped to make quilts to sell. Nancy has heart disease, depression, and arthritis.

At the time of the hearing Terry was sixty-five years old. He worked four days a week as an optometrist in Jefferson and Osceola, and stated he had gross income of about $6350 per month from his work. Terry testified he planned to resume working five days a week as an optometrist. He testified he expected to receive rental income on the farmland he inherited. Terry stated he received very little income from his interest in the optometry practices in Denison, Grinnell, Ida Grove, Manchester, and Carroll because the profits went to T.L. Brown Management and were used to pay the management company's two employees and to pay down the debts incurred in purchasing the properties. He also stated he received no income from the rental properties because all of the rental income was used to pay the mortgages on the properties. Terry was in

good health. He testified that ideally he would never retire, but also stated that by the time he was seventy he may no longer be interested in seeing patients.

The district court issued a dissolution decree for the parties on December 18, 2014, which incorporated the parties' stipulation. The court noted,

> The parties have developed a lifestyle that Nancy refers to as a "privileged lifestyle." Clearly Terry Brown has done this financially through his optometric practices and related businesses. His lifestyle includes working three days a week, a lake home in the Ozarks along with a boat, gambling, golf and other leisure activities. It would appear from exhibits and testimony that Terry has been able to maintain the lifestyle and pay expenses, manage debt repayment.

The court found, "Nancy has currently no marketable skills to maintain her lifestyle since marriage." The court concluded:

> This is a long term marriage with one spouse at a financial disadvantage. Nancy and Terry have a good lifestyle which may not be manageable by Terry in the future. Creating a situation where the same income will now be used for two households is unrealistic. Terry's continued requirement to repay loans greatly reduces this disposable income. It is also true that continued maintenance of a lake home and other leisure activities may need to be reduced. Additionally, Terry may not be able to continue a reduced work schedule.
> Nancy will receive substantial liquid assets which will enable her to continue the lifestyle she has enjoyed for many years. Terry will need to increase his work hours, meet outstanding debt obligations and continue payments to Nancy.

The court ordered Terry to pay spousal support of $3500 per month until Nancy or Terry dies, or until Nancy remarries. Terry appeals the spousal support provision of the parties' dissolution decree.

## II.     Standard of Review

Our review in dissolution cases is de novo. Iowa R. App. P. 6.907; *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). We examine the entire

record and determine anew the issues properly presented. *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). We give weight to the factual findings of the district court, but are not bound by them. *In re Marriage of Geil*, 509 N.W.2d 738, 741 (Iowa 1993).

### III.    Spousal Support

Terry appeals both the amount and duration of the award of spousal support, but does not dispute that Nancy should be awarded spousal support. He claims Nancy should be awarded $500 per month until February 28, 2016. After that date, when she is no longer receiving $1000 per month from T.L. Brown Management, Terry proposes that Nancy receive $1000 in spousal support per month until he turns seventy years old or retires from full-time employment, whichever occurs first. At that time, Terry believes Nancy's spousal support should be reduced to $500 per month. He states that in any event, the spousal support should terminate upon the death of either party or on Nancy's remarriage.

Spousal support is not an absolute right; an award depends on the facts and circumstances of the case. *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012). Iowa Code section 598.21A(1) (2013) provides the relevant factors in considering whether spousal support is appropriate, including (1) the length of marriage; (2) the age and emotional and physical health of the parties; (3) the property distribution; (4) the educational level of the parties at the time of marriage and when the dissolution action is commenced; (5) the earning capacity of the party seeking alimony, including educational background, training, employment skills, work experience, and length of absence from the job market;

and (6) the feasibility of the alimony-seeking party to become self-supporting with a reasonably comparable standard of living to that enjoyed during the marriage. *See also In re Marriage of Hansen*, 733 N.W.2d 683, 704 (Iowa 2007).

We consider the property division and spousal support together in evaluating their individual sufficiency. *In re Marriage of Debler*, 459 N.W.2d 267, 269 (Iowa 1990). A district court has considerable latitude in making an award of spousal support, and we will disturb the court's award only if it is inequitable. *Schenkelberg*, 824 N.W.2d at 486.

**A.** Terry contends the district court improperly relied upon the opinion of Nally in determining his income. Terry claims Nally should not have imputed the income from the S corporations to him, although Terry reported this income on his tax returns, because the income was used for the management of the companies and to pay down debt. He also claims he did not receive any rental income from the practice buildings because the money received from rent was used to pay the mortgages on the buildings. He states Nally did not consider business losses or the parties' ongoing debt obligations. Terry also contends Nally improperly used a five-year average of his income. He asserts his income has been decreasing in recent years, and so claims the five-year average artificially inflates his income.

The district court did not explicitly rely upon the opinion of Nally. The court stated, "From the exhibits received and the testimony offered it is not possible to determine exactly what amounts of 'net income' are available to pay spousal support." The court noted Nancy had offered the testimony of Nally, while Terry offered extensive financial information, including evidence of the parties' debts.

The court made the common sense conclusion that during the marriage Terry earned sufficient income for the parties' to maintain their lifestyle and pay their expenses, including debt repayment.

On our de novo review, we note Terry testified he had been making $5500 per month from the optometry practice in Jefferson and $850 per month from the optometry practice in Osceola, a total of $6350 per month. He also stated he had been working four days a week, but planned to increase his work schedule to five days a week, which he believed would increase his income by twenty percent. Thus, Terry's income from working as an optometrist was expected to increase to $7620 per month. Also, after February 28, 2016, Terry will receive the $1000 per month from T.L. Brown Management, which had previously been paid to Nancy. Even without considering the income from the other optometry practices, the rental income from the practice buildings, or farm rental income, Terry will have income of $8620 per month, or $103,440 per year. We conclude his income is actually greater than $8620 per month.

**B.** Terry claims the district court improperly set the amount of alimony at $3500 per month. He asserts the court did not carefully examine the needs of both parties. In particular, he claims the alimony award does not leave him with sufficient income to pay down the sizable amount of the parties' debts, which he assumed in the stipulation. Terry disputes the amount of Nancy's anticipated monthly expenses.

There was evidence that once the dissolution was finalized Nancy would receive Social Security benefits of $1290.50 each month. After February 28, 2016, she will no longer receive $1000 each month from T.L. Brown

Management. Nancy testified she would like to obtain part-time employment at a fabric store or sell quilts. It is unknown whether either of these plans will come to fruition, but at best she would probably earn only minimal income. The district court found, "Nancy has currently no marketable skills to maintain her lifestyle since marriage." The court also found Nancy could invest the assets she received in the parties' stipulation, which "could provide a comfortable income." In total, Nancy has income of $1290.50 per month, plus possibly some amount from employment and interest payments.

We conclude the district court equitably determined the amount of spousal support should be $3500 per month. If we consider Terry's income of $8620 per month alone, he will still have $5120 per month to spend as he sees fit.[6] His income is greater than $8620 per month, giving him a greater amount of disposable income. Nancy will have $1290.50 in Social Security benefits plus $3500 in spousal support payments, which will give her a total of $4790.50 each month. We find the district court carefully considered the income and anticipated expenses of both parties in setting the proper amount of spousal support.

**C.** Finally, Terry asserts his spousal support obligation should decrease when he reaches the age of seventy or when he retires, whichever occurs first. He defines retirement as working less than thirty hours per week. In his appellate brief, he states he would like to retire and instead he will have to increase his work hours. He claims it is inequitable to require him to continue his

---

[6] As noted during the dissolution hearing, by paying down the debt on the assets awarded to him, Terry increases his equity in those assets. We also note the value of the assets awarded to Terry exceed the amount of the parties' debts. Thus, Terry could sell the assets, repay the debt, and invest the profits, which would give him interest income.

employment until his death in order to pay the amount of spousal support ordered by the district court.

During the dissolution hearing Terry was asked, "[W]hen would you like to retire?" He answered, "Ideal would be never, but that isn't ideal. That isn't reality. If I could get to sixty-seven, now that would be good." Later he stated he did not want to continue to see patients when he was seventy. Terry testified that if he retired when he was seventy, he would receive about $3350 per month in Social Security benefits.

In the division of assets in the parties' stipulation, Nancy received an IRA valued at $129,639 and a 401K valued at $424,513. Terry was not awarded any retirement accounts. Although Nancy will be receiving less in Social Security benefits than Terry, she will have a greater amount of retirements funds due to the assets awarded to her. When he retires, Terry should have some increased equity in his non-liquid assets, but will not have a comparable amount of retirement income. Unlike the retirement funds received by Nancy, Terry did not receive any liquid assets, and therefore, it will be more difficult for him to convert his assets to a fund to be used for his retirement. The assets awarded to Terry consist of his interest in the optometry practices, the practice buildings, real estate, and vehicles. We determine that at the time Terry becomes seventy years old his spousal support obligation should be reduced to $1500 per month. This obligation will continue until the death of either party or until Nancy remarries, whichever occurs first.

**IV.     Attorney Fees**

Nancy seeks attorney fees of $4000 for this appeal.  This court has broad discretion in awarding appellate attorney fees.  *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005).  An award of appellate attorney fees is based upon the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.  *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007).  Because Terry was partially successful in his appeal, we determine he should pay $2000 toward Nancy's appellate attorney fees.

We affirm the decision of the district court, but modify to reduce Terry's spousal support obligation to $1500 per month when he turns seventy years old. Costs of this appeal are assessed to Terry.

**AFFIRMED AS MODIFIED.**