# IN THE SUPREME COURT OF IOWA

No. 10–1919

Filed October 26, 2012

**IN RE THE MARRIAGE OF JULIANNE R. SCHENKELBERG AND GARY W. SCHENKELBERG.**

Upon the Petition of

**JULIANNE R. SCHENKELBERG,**

Appellant,

And Concerning

**GARY W. SCHENKELBERG**,

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Carroll County, Joel E. Swanson, Judge.

A spouse seeks further review of a court of appeals decision affirming a decree of dissolution. **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED.**

J.C. Salvo and Bryan D. Swain of Salvo, Deren, Schenck & Lauterbach, P.C., Harlan, for appellant.

Gregory J. Siemann of Green, Siemann & Greteman, P.L.C., Carroll, for appellee.

**WIGGINS, Justice.**

On further review, a spouse asks us to determine the validity of a premarital agreement, the fairness of a property settlement, the sufficiency of the spousal support, and the denial of expert fees incurred by a spouse's attorney in preparation of the case for trial. The court of appeals affirmed the district court decision upholding the premarital agreement, the property settlement, and the award of spousal support. The court of appeals also upheld the district court's denial of the expert fees. We affirm the court of appeals opinion and the district court decision concerning the premarital agreement and the distribution of property, because we agree with the court of appeals that the premarital agreement was valid and the property settlement was equitable. Thus, the court of appeals opinion on these issues will stand as our final decision. However, we disagree with the court of appeals opinion and the district court decision regarding the spousal support award and the expert fees. Accordingly, we vacate that part of the court of appeals opinion and modify the district court decision regarding spousal support to require spousal support in the sum of $7000 per month until the spouse's death or remarriage. We also vacate that part of the court of appeals opinion regarding the expert fees and modify the award of attorney fees to require an additional payment of $17,050 in attorney fees for the expert services provided to the other spouse's attorney.

## I. Prior Proceedings.

This appeal involves the dissolution of marriage between Gary and Julianne Schenkelberg. In a bifurcated trial, the district court found the parties' premarital agreement was valid under Iowa Code chapter 596 (2009), the Iowa Uniform Premarital Agreement Act (IUPAA). The court finalized its decree in October 2010. The court divided the property

pursuant to the premarital agreement by awarding Julianne $312,295 in property and Gary $1,769,517 in property. The court also awarded spousal support to Julianne in the sum of $5000 per month until age sixty-two, her death, or her remarriage. The payments then reduced to $2000 until age seventy, her death, or her remarriage. Finally, the court denied Julianne's request for Gary to pay her attorney for the expert fees incurred in preparation of the case.

Julianne appealed, contending the premarital agreement was void, the property settlement was inequitable, the spousal support was inadequate, and the denial of expert fees was improper. We transferred the case to the court of appeals. The court of appeals affirmed the district court on all issues. It also denied her appellate fees. Julianne then sought further review, which we granted.

## II. Issues.

In this appeal, Julianne raises four issues. She claims (1) the court erred in finding the premarital agreement was valid; (2) the court distributed the property inequitably, considering the terms of the premarital agreement and provisions of the IUPAA; (3) the court awarded an insufficient amount of spousal support; and (4) the court erred by not requiring Gary to pay the expert fees incurred by her attorney.

In considering an application for further review, we have the discretion to review all or part of the issues raised on appeal or in the application for further review. *In re Marriage of Becker*, 756 N.W.2d 822, 824 (Iowa 2008). In exercising our discretion, we choose only to review the support award and the expert fees. Therefore, we will let the court of appeals' affirmance of the district court's decision concerning the premarital agreement and the property distribution stand as the final

decision of this court. *See Hills Bank & Trust Co. v. Converse*, 772 N.W.2d 764, 770 (Iowa 2009).

### III. Standard of Review.

Appeals regarding the dissolution of marriage are equitable proceedings. Iowa Code § 598.3. Therefore, our standard of review is de novo. *In re Marriage of Morris*, 810 N.W.2d 880, 885 (Iowa 2012); *see* Iowa R. App. P. 6.907. Although we give weight to the factual determinations of the district court, their findings are not binding upon us. Iowa R. App. P. 6.904(3)(*g*); *In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009).

We review an award of attorney fees that includes expert fees for an abuse of discretion. *In re Marriage of Maher*, 596 N.W.2d 561, 568 (Iowa 1999); *see also In re Marriage of Muelhaupt*, 439 N.W.2d 656, 662–63 (Iowa 1989). An abuse of discretion occurs when the district court exercises its discretion "on grounds or for reasons that are clearly untenable or to an extent clearly unreasonable." *State v. Nelson*, 791 N.W.2d 414, 419 (Iowa 2010); *Graber v. City of Ankeny*, 616 N.W.2d 633, 638 (Iowa 2000). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Graber*, 616 N.W.2d at 638.

### IV. Facts.

On our de novo review, we make the following findings of fact. Gary and Julianne Schenkelberg married on July 4, 1994. Both were previously married to others and obtained their respective dissolutions in 1993. Julianne had four children from her first marriage. Gary had six children by his first wife. All of their children have attained majority. Prior to their nuptials, Gary and Julianne entered into a binding premarital agreement.

5

The couple's Iowa tax returns for the years 2005–2009 show Julianne made little to no income. However, the records indicate that Gary's wage, income, and dividend income for those years was as follows:

| 2005 | $182,329 |
| 2006 | $174,654 |
| 2007 | $187,068 |
| 2008 | $250,603 |
| 2009 | $287,311 |

Additionally, the records reveal that his subchapter-S corporation gave Gary a schedule K-1, and that on the K-1, he received the following taxable distributions:

| 2005 | $134,824 |
| 2006 | $159,916 |
| 2007 | $200,381 |
| 2008 | $243,701 |
| 2009 | $444,921 |

Gary claimed his income was limited to his wages and that the K-1 distributions were not actually available to him. The district court agreed and found Gary's average income for computing spousal support for the years 2005–2009 was $208,000.[1] In reaching this conclusion, the court disregarded all distributions from the subchapter-S corporation. Based on this finding, the court awarded Julianne spousal support in the amount it did.

We disagree with the court's calculation of Gary's income for the years 2005–2009 and find his income was substantially higher. We base our finding on the following evidence presented at trial.

The accountant for Gary and the subchapter-S corporation explained that the corporation sometimes distributed additional money to the shareholders, including Gary, in the form of loans. Gary testified that he had received distributions from the corporation, which he used to

---

[1]In making this calculation, the district court only considered Gary's wages and excluded his interest and dividend income.

pay back his loans arising from business and tax liabilities. However, there are no documents in the record showing that Gary ever signed a note or had any indebtedness to the corporation. This testimony alone justifies a finding that Gary's income was higher than what the district court and the court of appeals calculated.

Gary's individual tax returns, as well as the corporation's tax returns and balance sheets, also suggest Gary's income was higher. Gary's tax returns show he paid federal and state taxes for the years 2005–2009 as follows:

| | |
|------|------------|
| 2005 | $88,482 |
| 2006 | $91,474 |
| 2007 | $115,102 |
| 2008 | $167,097 |
| 2009 | $233,091 |

Gary could not have afforded to pay this amount of taxes unless he received a distribution from the corporation. Gary argues that if he did receive any such funds, the distribution was in the form of a loan that he was obligated to pay back. However, the evidence shows that even if these were loans, he paid them back in full by 2009.

The subchapter-S tax returns indicate the outstanding loans to shareholders for the years 2005–2009 were as follows:

| | |
|------|-------------|
| 2005 | $1,529,501 |
| 2006 | $1,462,556 |
| 2007 | $1,123,155 |
| 2008 | $902,287 |
| 2009 | $0 |

These figures demonstrate that even if he received a loan from the corporation, there were no loans outstanding as of 2009. Therefore, the corporation either forgave the debt or made distributions to him to retire the loan. In other words, he had sufficient income to pay his taxes in full for the years 2005–2009 without sacrificing his lifestyle or incurring any

debt. It is logical to conclude that Gary must have received more than just wages from the corporation, because his only source of income was from the corporation.

The corporate balance sheets also support our conclusion that Gary received more income from the corporation than just his wages. The tax records of the corporation indicate that the total schedule K-1 distribution to all the shareholders[2] for the years 2005–2009 was as set forth below:

| | |
|------|------------|
| 2005 | $607,392 |
| 2006 | $720,044 |
| 2007 | $926,522 |
| 2008 | $1,224,804 |
| 2009 | $1,931,793 |

Additionally, the balance sheets for the subchapter-S corporation indicate that the shareholders' equity in the corporation for the years 2005–2009 was as follows:

| | |
|------|------------|
| 2005 | $1,403,588 |
| 2006 | $1,447,195 |
| 2007 | $1,447,195 |
| 2008 | $1,447,195 |
| 2009 | $1,401,523 |

If the corporation was retaining distributions as Gary argued, the shareholders' equity should have increased dramatically. As illustrated above, it did not.

From these documents, the figures contained therein, and the testimony of Gary and the accountant, it is apparent that Gary was getting substantial distributions from the corporation above his wages. This evidence leads us to find that Gary's average income for the years 2005–2009 was more than $400,000 per year, not just $208,000 as found by the district court.

---

[2]During the years from 2005–2009, Gary owned approximately twenty-five percent of the subchapter-S corporation.

As for Julianne's expenses, we agree that her estimate of $7028 in monthly expenses is reasonable. Although some of the estimates may appear high, the expenses are in line with the lifestyle she enjoyed while married to Gary. We will discuss additional facts as necessary to decide the issues on appeal.

**V. Spousal Support.**

Spousal support "is not an absolute right, and an award thereof depends upon the circumstances of a particular case." *In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005) (quoting *In re Marriage of Spiegel*, 553 N.W.2d 309, 319 (Iowa 1996)) (internal quotation marks omitted). "[P]rior cases are of little value in determining the appropriate alimony award." *In re Marriage of Becker*, 756 N.W.2d at 825–26.

The amount of spousal support is always calculated equitably based upon "*all* of the following" factors contained in Iowa Code section 598.21A(1) (emphasis added). These include:

> *a.* The length of the marriage.
>
> *b.* The age and physical and emotional health of the parties.
>
> *c.* The distribution of property made pursuant to section 598.21.
>
> *d.* The educational level of each party at the time of marriage and at the time the action is commenced.
>
> *e.* The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
>
> *f.* The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

*g.* The tax consequences to each party.

*h.* Any mutual agreement made by the parties concerning financial or service contributions by one party with the expectation of future reciprocation or compensation by the other party.

*i.* The provisions of an antenuptial agreement.

*j.* Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1).

A trial court has considerable latitude when making an award of spousal support. *Olson,* 705 N.W.2d at 315. Therefore, we will only disturb the trial court's award of spousal support if it fails to do equity between the parties. *Id.* In reviewing the record and the factors contained in section 598.21(A), we conclude the award by the trial court failed to do equity.

Gary and Julianne were married for sixteen years, and thus, the length of the marriage merits support payments. *See Fenchel v. Fenchel,* 268 N.W.2d 207, 210 (Iowa 1978) (upholding award of spousal support for marriage lasting sixteen years).

The parties had a mutual agreement that Gary would be the breadwinner and Julianne would stay home. The comparative income of the spouses is another factor for the court to consider when evaluating an award of spousal support. *See, e.g., In re Marriage of Hansen,* 733 N.W.2d 683, 704 (Iowa 2007) (considering comparative income of the parties at $46,300 versus $18,900 as evidence that $500 per month in spousal support to wife was proper). Here, Gary's income during the marriage was substantial, while Julianne's was negligible. At age fifty-seven, with her education and employment history, even with some retraining, it is unlikely Julianne will ever be able to generate enough income to support herself in the style that Gary did during the marriage.

Gary also received a substantial property award from the court because of the premarital agreement. It would be improper to increase the spousal support award solely to penalize him for the premarital agreement. However, we believe that in calculating spousal support, it is proper to look at the assets each party received. We do so to determine the income potential of the property distributed to each party. In this case, Gary received assets that will continue to generate substantial income. The assets the court awarded Julianne will not. These assets, together with his wages, will give Gary the ability to pay a substantial amount of support indefinitely into the future.

Finally, the report prepared by the expert hired by Julianne's attorney indicates that the tax consequence of awarding Julianne substantial spousal support will only minimally affect Gary. This is true because of Gary's high income and tax rate, coupled with the fact that any support payments he makes are deductible from his gross income.

The district court stopped Julianne's support payments at age seventy. We find that it should be payable for Julianne's life. As long as Gary has an interest in the corporation, there is no reason to believe that he will not be receiving a substantial cash distribution from the corporation, even if he no longer receives a salary from it. Moreover, if he divests himself from his ownership in the corporation, we believe the value he will receive for his interest in the corporation will generate sufficient funds to reinvest in another asset that will provide him with substantial income.

On the other hand, Julianne was fifty-seven years old at the time of the dissolution. She received no assets that will produce a significant stream of income to keep her in the lifestyle she had become accustomed to while married to Gary. Her only retirement account had a fair market

value of $1328. Based on the property distribution, her past work record, and age, we have no reason to believe if her support payments were to stop at age seventy, she would have significant income or assets to maintain the lifestyle she had with Gary. Realistically, her only source of income other than spousal support would be a share of Gary's social security payments.

Consequently, under the circumstances of this case, we find Julianne is entitled to traditional spousal support, which is "payable for life or so long as a spouse is incapable of self-support." *In re Marriage of Becker*, 756 N.W.2d at 826 (citation and internal quotation marks omitted). Therefore, we modify the district court's decree and order Gary to pay Julianne spousal support in the sum of $7000 per month until her death or her remarriage.

### VI. Expert Fees.

Julianne's attorney hired an expert to assist him with trial preparation. The expert is a certified public accountant practicing in a large firm in West Des Moines. The expert is qualified to give opinions regarding forensic accounting in dissolution of marriage actions.

The expert submitted a bill for services rendered in valuing the subchapter-S corporation, preparing schedules dealing with the tax consequences involving various amounts of spousal support, and reviewing the tax returns and financial statements to trace shareholder transactions. The bill only covered the services the expert provided in assisting Julianne's attorney to prepare for trial and did not cover any charges for testifying at the trial. The bill itemized each service provided and totaled $17,050. Gary did not contest the reasonableness of the fee.

The district court awarded Julianne $30,000 in attorney fees, but refused to reimburse her for the amount her attorney expended to pay

the $17,050 expert bill. The district court denied expert fees, because it found the expert's report "was not necessary and contributed nothing to the determination of spousal support."

The court has considerable discretion in awarding attorney fees. *In re Marriage of Maher,* 596 N.W.2d at 568. A court may consider expert fees in an award of attorney fees. *See In re Marriage of Muelhaupt*, 439 N.W.2d at 662–63; *see also Tydings v. Tydings*, 567 A.2d 886, 891 (D.C. 1989) (upholding award of expert fees for accountant to value husband's corporate interest where husband was in the best financial position to pay); *Stansberry v. Stansberry*, 580 P.2d 147, 150 (Okla. 1978) (granting expert fees to wife for appraisers who valued the marital estate).

We disagree with the district court's finding that the expert's services were not necessary or useful in determining the spousal support award. The value of the assets received by Gary, the sums he obtained from the subchapter-S corporation, and the tax consequences of awarding spousal support were important considerations in making our award of spousal support. Accordingly, we find the district court decision in this regard is clearly untenable and unreasonable. Therefore, we modify the district court's decree and award Julianne an additional $17,050 towards her attorney fees for the expert's services. We do not make an award for appellate attorney fees.

## VII. Disposition.

We affirm the court of appeals opinion and the district court decision concerning the premarital agreement and the distribution of property. The court of appeals opinion on these issues will stand as our final decision. However, we vacate the court of appeals opinion as to the spousal support award and expert fees. Accordingly, we modify the district court decision on spousal support to order Gary to pay Julianne

spousal support in the sum of $7000 per month until her death or her remarriage. We also modify the award of attorney fees and require Gary to pay Julianne an additional $17,050 in fees for the expert services provided to her attorney. We tax the costs of this action equally between the parties.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED AS MODIFIED.**