# IN THE COURT OF APPEALS OF IOWA

No. 16-1099
Filed January 11, 2017

IN RE THE MARRIAGE OF MALISSA NIKOLE MOURTON
AND RUSSELL EDWARD MOURTON

Upon the Petition of
MALISSA NIKOLE MOURTON,
    Petitioner-Appellant,

And Concerning
RUSSELL EDWARD MOURTON,
    Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Hamilton County, Michael J. Moon,

Judge.

        The mother appeals from the provision of the dissolution decree giving the

parties joint physical care. **AFFIRMED.**

        Dan T. McGrevey, Fort Dodge, for appellant.

        Alyssa A. Kenville of Kenville Law Firm, P.C., Fort Dodge, for appellee.

        Considered by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

Malissa Mourton appeals from the provisions of the district court's dissolution decree concerning her three minor children with Russell Mourton. Malissa challenges the court's placement of the parties' children in joint physical care of the parents rather than awarding Malissa physical care of the children. Russell did not file a brief in this matter. We affirm.

## I. Background Facts and Proceedings

In May 2009, Justin and Malissa were married in Webster City after living together since 2004. Justin and Malissa have three minor children: B.N.M., who was born in 2001; A.R.M., who was born in 2005; and, A.H.M. who was born in 2007.

Russell works as a lineman for the City of Webster City under a traditional forty-hour workweek (7:00 a.m. to 4:00 p.m.). He is also required to be on call one week per month (4:00 p.m. to 7:00 a.m.). Malissa does not work outside the home and suffers from systemic lupus and bipolar disorder. Prior to the lupus diagnosis, Malissa experienced a variety of medical complications resulting from autoimmune issues, including seizures, chronic pain, and headaches. The record indicates that her current treatment plan controls the most serious side effects. Although her current symptoms are sporadic, she sometimes suffers from fatigue and impaired mental function. The long-term prognosis of Malissa's medical conditions is unclear from the record.

Prior to the dissolution action, Malissa primarily cared for the children with her parents' assistance. Malissa's parents moved to Webster City and purchased a house in the same neighborhood as the marital home. The

relocation allowed them to help Malissa with her medical conditions and the day-to-day activities of child rearing. Malissa's parents intend to remain in Webster City indefinitely.

Malissa attended the children's musical concerts, soccer games, Cub Scout meetings, and she participated in local church activities. When Russell was not at work, he spent time with the children by attending their musical concerts, soccer games, Cub Scout Meetings, and school conferences. Russell also enjoyed various outdoor activities with the children. Both Malissa and Russell intend to remain in Webster City.

On June 25, 2015, Malissa filed a petition for dissolution of marriage asking, in part, for physical care of the children. On July 10, 2015, Russell filed an answer also seeking physical care of the children.[1]

Russell and Malissa both remained in the marital home during the pre-trial proceedings. Although Malissa had requested exclusive possession of the marital home during the temporary orders proceeding, the court did not grant her request. The temporary order provided for joint physical care of the children as long as the parents were both living in the marital home. As time went on, the already tense environment in the marital home worsened. In August 2015, Russell was arrested for child endangerment, but the charges were eventually dismissed by the court. The Iowa Department of Human Services (DHS) investigated multiple abuse allegations, including the incident from the arrest and

---

[1] The Iowa Code requires a party to request joint physical care before a court can award such a custody arrangement. *See* Iowa Code § 598.41(5)(a) (2015). While both parties requested physical care in their filings, Russell alternatively requested a joint physical care award during his testimony: "Q. Would you also be open to the idea of shared physical care? A. Yes, I would."

another incident involving Russell and the children. DHS categorized both investigations as "not confirmed and not placed" and determined the home to be safe.

On April 21, 2016, the district court filed a dissolution decree for the parties. The court determined Malissa and Russel should have joint legal custody of their children and joint physical care and awarded Malissa the marital home. Malissa appeals the physical-care provision of the decree, arguing joint physical care is inappropriate because of the parties' inability to communicate and Russell's conduct, including his absence from the children's lives during the dissolution proceedings.

## II. Scope and Standard of Review

We review cases tried in equity, such as dissolution cases, de novo. Iowa R. App. P. 6.907; *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 483–84 (Iowa 2012). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g). "Prior cases are of little precedential value, except to provide a framework for analysis, and we must ultimately tailor our decision to the unique facts and circumstances before us." *In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995).

## III. Discussion

When physical care is at issue in marriage dissolution cases, the district court may grant the parents joint physical care or choose one parent to be the caretaker of the children. *In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007). "The critical question in deciding whether joint physical care is . . .

appropriate is whether the parties can communicate effectively on the myriad of issues that arise daily in the routine care of a child." *Id.* at 580. The court considers the following factors in determining whether to grant joint physical care: (1) the historical care giving arrangement for the child between the parents, (2) the ability of the spouses to communicate and show mutual respect, (3) the degree of conflict between the spouses, and (4) the degree to which the parents are in general agreement about their approach to parenting. *In re Marriage of Hansen*, 733 N.W.2d 683, 697–99 (Iowa 2007); *In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007). Not all factors are given equal consideration, and the weight of each factor depends on the specific facts and circumstances of each case. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). The primary consideration for custody determinations is the best interests of the child. Iowa R. App. P. 6.904(3)(o).

Turning to the first factor, both parties have contributed to the physical care of the minor children. Malissa was the primary caregiver as a stay-at-home parent before the dissolution proceedings. However, she required assistance from her parents. For example, the children would go to Malissa's parents' house after school to do their homework, and Russell testified that Malissa's parents substantially helped Malissa with caregiving. While "Russell has assumed a more traditional role in the family of breadwinner," as the district court found, he also participated in the caregiving of the children before the filing of the petition for dissolution by attending school and sporting events, doctor's appointments, engaging in recreational activities on the weekends, and

participating in Cub Scout meetings. Both Malissa and Russell have shown a long-term interest in providing care for their children.

The second and third factors are the ability to communicate and the degree of conflict between the parents. *Hansen*, 733 N.W.2d at 698. During the divorce proceedings, the parties struggled to communicate and conflict was prominent; we believe this was likely aggravated by the parties' living arrangement. Furthermore, testimony regarding the parties' relationship with their children was inconsistent. Malissa testified that Russell was never home and when he was, he would confine himself to the basement and ignore the children. Conversely, Russell testified that although he worked more during the proceedings for financial reasons, he was still able to watch cartoons with the children and help put them to bed. Russell also claimed that part of the reason he spent less time with the children during the proceedings was because Malissa took the children to her parents' house when he was home.

Malissa made multiple accusations of domestic abuse, one supported by the school counselor, following the filing of the petition. Russell denied these allegations and DHS found no abuse during the course of its investigations. Certainly, the dissolution proceedings combined with the parties' living situation magnified the conflict and poor communication between the parties, as illustrated by the timing of the events. However, the parties demonstrated the ability to communicate before the dissolution proceedings by jointly attending school conferences and medical appointments. Furthermore, we believe the above facts are in accord with the district court's findings that "[Russell] will resume his

previous quality relationships with the children once the angst caused by these proceedings has subsided."

The final factor is the degree to which the parents are in general agreement about their parenting approach. *Id.* at 699. In order to ensure success in a joint physical care arrangement, "the parents must generally be operating from the same page on a wide variety of routine matters." *Id.* However, "[i]t would be unrealistic . . . to suggest that parents must agree on all issues all of the time . . . ." *Id.* According to the testimony, both parents will remain in Webster City, and they value the importance of the minor children's relationship with the other parent. Both parents also encourage counseling for their children and stress the importance of education. Certainly, Malissa and Russell have at times disagreed on some parenting strategies, but it is apparent from the record that both encourage their children's growth and development through counseling, education, recreational activities, and religious services.

## IV. Conclusion

We hold that joint physical care is in the best interest of the children under the present facts. Indeed, the parties suffered from conflict and communication breakdowns. However, those setbacks appeared to peak during the divorce proceedings. We see no reason why the parties cannot communicate effectively and avoid conflict following the dissolution proceedings. Furthermore, the parties have illustrated shared values in encouraging the development, well-being, and growth of their minor children. We agree with the district court: "Both parties seem to be genuinely interested in doing what is in the long-term best interests of the children. Both love the children." Accordingly, we affirm the district court's

decision to place the children in joint physical care of the parties. In reaching this conclusion, we recognize that the district court had the opportunity to hear the evidence and view the witnesses firsthand. *See id.* at 690.

**AFFIRMED.**