## IN THE COURT OF APPEALS OF IOWA

No. 16-1035
Filed April 19, 2017

IN RE THE MARRIAGE OF LINDA KAY SPENCE n/k/a LINDA KAY WEIR
AND TODD ALLEN SPENCE

Upon the Petition of
**LINDA KAY SPENCE n/k/a LINDA KAY WEIR,**
        Petitioner-Appellee,

And Concerning
**TODD ALLEN SPENCE,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Henry County, John G. Linn, Judge.


        The husband appeals from the economic provisions of the parties' dissolution decree. **AFFIRMED.**


        Diana L. Miller of Whitfield & Eddy, P.L.C., Mount Pleasant, and Sarah S. James of Whitfield & Eddy, P.L.C., Des Moines, for appellant.

        Robert J. Engler and Marlis J. Robberts of Robberts & Kirkman, L.L.L.P., Burlington, for appellee.


        Considered by Vaitheswaran, P.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

Todd Spence appeals from the economic provisions of the parties' dissolution decree. The district court determined the parties' home was the inheritance of his wife, Linda Weir (formerly known as Linda Spence), and set the property aside as non-marital. Todd maintains setting aside the entire value of the property was unjust. Additionally, he maintains it was inequitable for the court to award Linda the parties' adjoining house and property. On appeal, Todd asks that we modify the district court's decree to award him an equalization payment and the second property. In response, Linda asks that we affirm the decree of the district court and award her appellate attorney fees.

## I. Background Facts and Proceedings.

Todd and Linda were married in 1990. Linda had two sons from a previous marriage, Aaron and Jeremy, and the sons lived with Linda and Todd. The parties had one child together, Ashley, who had reached majority before Linda filed for dissolution in 2015.

At the time of the dissolution hearing, Linda was fifty-six years old. She was generally in good health, but she had undergone multiple surgeries on her back, and she continued to have some back problems. She was employed by the University of Iowa and earned approximately $60,000 annually. Todd was fifty years old and in generally good health. He had maintained the same job for twenty-five years, and he also earned approximately $60,000 annually.

The main issue of contention between the two parties at the dissolution hearing was the value of the home and whether it was marital property. In 2005, Linda's oldest son, Jeremy, died during a recreational skydiving incident. At the

time, he was on active duty in the United States military, and although Jeremy's death was not service connected, Linda received a number of financial payments as a result. She also received the benefit of Jeremy's substantial life insurance policy, in which Jeremy had listed Linda as the sole beneficiary. Ultimately, Linda received approximately $507,000 in death benefits.

Linda testified that she donated $50,000 of the funds to a local church. She also used approximately $82,500 on various purchases that benefitted both her and Todd—two motorcycles and a van. She spent the rest of the money, $371,837, building and furnishing a new home, which was completed in 2008. The home was built on land the parties had purchased together for $10,300—and deeded as "joint tenants with full rights of survivorship"—in 1998. Todd maintains that the land was worth $18,000 at the time of dissolution.[1]

There was competing testimony at trial about the resale value of the home. It is built in a small community and is apparently one of the nicer homes in the area. That being said, the highest priced home sold in the town over the three years before the trial was for $227,500. Another property in the town, priced at $389,000, had been on the market for more than a year. Additionally, the home sits next to the city sewer lagoon and is bordered by a junkyard. Linda's expert, who valued the home at $238,000, put more emphasis on the negative "discounts" or factors. Todd's expert estimated the home would resell for $269,000.

---

[1] We note that Todd did not testify that the value of the land was anything other than the purchase price of $10,300. On appeal, he relies on the "opinion of site value" from Linda's expert's appraisal of the property—an appraisal he otherwise disagrees with.

The home was built approximately 200 feet from the parties' first home. The parties agreed the second property (and structure) was worth $20,000. Linda indicated she wanted to be awarded the second property, so she could demolish the house on it. The house was in disrepair—with holes in the roof and black mold in the bathroom, and Linda maintained the parties had always intended to tear it down. Todd asked that he be awarded the property so he could live there while he built a home somewhere else. He intended to make some repairs to the house and then give it to the parties' adult daughter. Linda testified that she did not want to be neighbors with Todd or her daughter; both Todd and the daughter were living at the second property at the time of the dissolution hearing, and the situation had not been peaceful. Linda felt as if she was being monitored by Todd and Ashley. Additionally, Ashley had drilled through the locks of the main home in order to remove things while Linda was at work, and the police had been called to intervene at least once.

The parties agreed to the value of most of the marital property, and they stipulated to the disposition of most it. The district court accepted the stipulation, adopted it, and incorporated it into the dissolution decree. The court concluded the home was not marital property but rather inheritance to be set aside. The court considered the marital property that had been stipulated to, noting that Todd had received $233,942 in net marital assets, while Linda had received $176,392—a $57,550 difference. The court then awarded Linda the second property, indicating that it was doing so because it "more closely equalize[d] the division of assets agreed upon by the parties." "[T]he court [did] not believe it would be practical to attempt to refurbish the house because of its poor

condition" and it was "not fair to Linda to have either Todd or Ashley residing in such close proximity to the house in which Linda will presumably be residing for years to come."

Todd appeals.

## II. Standard of Review.

We review dissolution cases de novo. *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 483–84 (Iowa 2012); *see also* Iowa R. Civ. P. 6.907 ("Review in equity cases shall be de novo."). We give weight to the district court's factual determination, but we are not bound by them. *Schenkelberg*, 824 N.W.2d at 484.

In an appeal from a dissolution, we award appellate attorney fees at our discretion. *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006).

## III. Discussion.

### A. Inheritance.

Todd does not dispute the house was built with money that Linda received individually as inheritance after her son's death. Rather, Todd claims it was unjust for the court to set the entire value of the property aside.

"Property inherited by either party . . . during the course of the marriage is the property of that party and is not subject to a property division under this section except upon a finding that refusal to divide is inequitable to the other party . . . ." Iowa Code § 598.21(6) (2015). When deciding whether it would be inequitable to exempt a spouse's inheritance from division, we consider the following factors:

> (1) contributions of the parties toward the property, its care, preservation or improvement[];

> (2) the existence of any independent close relationship between the donor or testator and the spouse of the one to whom the property was given or devised;
> (3) separate contributions by the parties to their economic welfare to whatever extent those contributions preserve the property for either of them;
> (4) any special needs of either party;
> (5) any other matter[,] which would render it plainly unfair to a spouse or child to have the property set aside for the exclusive enjoyment of the donee or devisee.

*In re Marriage of McDermott*, 827 N.W.2d 671, 679 (Iowa 2013) (alterations in original) (citation omitted).

Todd helped with some aspects of construction as the house was being built, and he took responsibility for the most of the yard work while the parties lived in the house. He also testified he had an independently close relationship with Jeremy. We do not doubt the veracity of the sentiment, but we note that Jeremy had the option to list more than one beneficiary of his death benefits and chose to list his mother individually. In considering the "special needs" of the party, we note that Linda is approximately seven years older than Todd and has had some health complaints. Additionally, Linda is presumably closer to retirement than Todd, and she lost half of her retirement savings—approximately $120,000—in the divorce decree. Todd argues that awarding the home to Linda (as well as the other property) "will effectively . . . put him out on the street"; he maintains we should consider this as a "special need" of his. But Todd earns approximately $60,000 annually, and there is nothing in the record that suggests he will be unable to secure other housing. *See In re Marriage of Thomas*, 319 N.W.2d 209, 212 (Iowa 1982) (noting that some of the factors weighed in favor of dividing the asset, but determining it was not unjust to set it aside because the

complaining party was "well qualified to fend and care for herself" and she had no special needs).

We acknowledge the parties had a relatively long marriage—about twenty-six years—and had lived in the home for approximately eight years at the time of the dissolution, but we are not convinced it is inequitable or unjust to set the entire value of the home aside. *See In re Marriage of Liebich*, 547 N.W.2d 844, 851 (Iowa Ct. App. 1996) ("[I]t is important to note the act of placing gifts or inheritances received by one spouse into joint ownership and/or commingling the same with other marital assets is not controlling in deciding whether the property should be divided as a marital asset.").

Additionally, we note that the entire inheritance was not set aside as non-marital property. The van and the two motorcycles Linda purchased with funds from the inheritance were divided as marital assets.

**B. Division of Marital Assets.**

Next, Todd contends it was inequitable to award Linda the second property. He maintains it left him without a home.

First, as we noted above, there is no reason that is apparent from the record before us that Todd could not find housing elsewhere. Second, even with Linda receiving the second property, Todd received more of the marital assets:

Before including the $20,000 second property in the division, Todd received $246,089 in marital assets and $12,147 of debt, for a net total of $233,942 in marital assets. Meanwhile, Linda received $212,062[2] in marital

---

[2] Todd correctly notes the district court's accounting did not include the marital asset of the land the new home was built on. Linda stipulated that $10,300 of the value of the

assets and $17,670 in debt, for a net total of $194,392. In other words, Todd received $39,550 more than Linda in marital assets. If we awarded him the second property, as he contends is equitable, the division of assets would become even more lopsided, with Todd receiving $59,550 more than Linda.

Not only do we believe it would be inequitable to award Todd the second property, but we are also convinced by the district court's statements about the disposition of the property—namely that the residence is not salvageable, and it would be "unwise and inequitable to force Linda to have Todd and/or Ashley as neighbors."

Part of Todd's complaint with the district court's division of assets—even though he received more than half the marital assets—is that a large percentage of what he received is not "liquid" because it is wrapped up in retirement accounts. But Todd and Linda agreed as part of the stipulation that Todd would keep all of his retirement accounts and get half of Linda's. Todd agreed to receive a large amount of "tied up" assets, and we will not now entertain his complaints about getting what he asked for. *See, e.g.*, *In Marriage of Martin*, No. 16-0971, 2017 WL 510975, at *5 (Iowa Ct. App. Feb. 8, 2017).

### C. Appellate Attorney Fees.

Linda asks that we award her $3000 in appellate attorney fees. The award of appellate attorney fees is not a matter of right; the decision rests in this court's discretion. *Sullins*, 715 N.W.2d at 255. In making the decision, we

---

home was a marital asset subject to division. According to Linda's expert's appraisal, the value of the land had risen to $18,000 at the time of the dissolution hearing. Here, we have adjusted the district court's findings to add $18,000 to the marital assets Linda received.

consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (citation omitted).

In support of her request, Linda notes Todd was awarded a larger portion of the marital assets by the district court, and she was obliged to defend the court's decision on appeal. She asks for approximately half of the appellate attorney fees she incurred, which we believe is fair.

## IV. Conclusion.

Because it was not unjust to set aside Linda's inheritance and the district court's division of marital assets was not inequitable, we affirm the dissolution decree. Additionally, we award Linda $3000 in appellate attorney fees.

**AFFIRMED.**