**IN THE COURT OF APPEALS OF IOWA**

No. 17-2106
Filed September 26, 2018

**IN RE THE MARRIAGE OF JEFF MICHAEL HOCKEMEYER
AND RENAE HOCKEMEYER**

**Upon the Petition of
JEFF MICHAEL HOCKEMEYER,**
        Petitioner-Appellant,

**And Concerning
RENAE HOCKEMEYER,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Grundy County, Joel A. Dalrymple,

Judge.


        A father appeals the physical care determination of a dissolution decree.

**AFFIRMED.**


        Barry S. Kaplan and C. Aron Vaughn of Kaplan & Frese, LLP, Marshalltown,

for appellant.

        John J. Wood and Kate B. Mitchell of Beecher, Field, Walker, Morris,

Hoffman & Johnson, PC, Waterloo, for appellee.


        Heard by Vogel, P.J., Tabor, J., and Carr, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**CARR, Senior Judge.**

Jeff Hockemeyer appeals the physical care provision of the decree dissolving his marriage with Renae Hockemeyer. Jeff claims the district court should not have granted Renae physical care of the child.

### I.      Background Facts & Proceedings

Jeff and Renae Hockemeyer met in 2007 in Kansas City, Missouri. After Jeff was laid off following closure of the construction office for which he worked, the two moved together to Jeff's hometown of Grundy Center in February 2008. They married in 2011, and had one child, M.J.H., in 2013. During the marriage the parties resided in Grundy Center.

In May 2016, the parties separated, with Jeff moving out of the marital home. In July, Jeff filed a petition for dissolution of the marriage. The parties reached an agreement to share care of M.J.H. The marital home was foreclosed on following the closing of Renae's clothing store in 2016.

Jeff has worked on the family farm eight miles northeast of Grundy Center since 2008 with his father and brother. Jeff's family is close, with Jeff's parents and brothers living in the Grundy Center area and Des Moines. Jeff has been living eight miles south of town with a roommate, but plans to move into Grundy Center.

At the time of trial, Renae worked part time for Cambrian Granite & Stone in Cedar Falls and hoped to move to full time soon. In August 2017, Renae moved to Cedar Falls, twenty-seven miles northeast of Grundy Center, where she lives in a duplex house. She enrolled M.J.H. in daycare in Cedar Falls. Renae is close to

her family, who live in Nebraska and Colorado. Renae assured the court she planned stay in the area to maintain M.J.H.'s relationship with her father.

During the marriage, Renae acted as primary caretaker for M.J.H. Renae scheduled doctor appointments, signed M.J.H. up for extracurricular activities, and was the one getting M.J.H. ready for the day. When M.J.H. would get sick, it was usually Renae staying home and taking M.J.H. to doctor appointments. Jeff would step in and help with care when needed, was involved in M.J.H.'s day-to-day life, and shared in household chores. Renae and Jeff consider each other to be good parents.

The district court entered its dissolution decree on December 5. The parties agreed to joint legal custody. The court found Renae was M.J.H.'s primary caregiver but noted Jeff was hands-on and active in raising M.J.H. The court noted if the parties lived closer together it would have ordered joint physical care, but found the distance between the residences and M.J.H.'s eventual school district made "shared physical placement . . . too troublesome and onerous upon the child."[1] The court granted physical care to Renae with visitation for Jeff. Jeff filed a motion to amend and enlarge requesting joint physical care if he were to move northeast of the family farm closer to Cedar Falls, which the court denied.

Jeff appeals, seeking physical care or joint physical care of M.J.H.

## II.    Standard of Review

In an appeal from the dissolution of a marriage, we engage in de novo review. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We give

---

[1]  Jeff and Renae live approximately thirty-five miles apart in separate school districts. The Hockemeyer farm, Jeff's place of employment, is twenty miles from Cedar Falls.

weight to the district court's factual findings, though they are not binding on us. *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 484 (Iowa 2012).

### III. Custody

Jeff appeals the district court's decision granting physical care to Renae. Jeff seeks physical care, claiming M.J.H.'s emotional, social, and educational needs are best served by staying in the community she has grown up in surrounded by Jeff's family. Alternatively, Jeff seeks joint physical care.

In disputes about physical care, our primary consideration is the best interests of the children. *In re Marriage of Murphy*, 592 N.W.2d 681, 683 (Iowa 1999). "The goal is to place the child in the care of the parent who is best able to minster to the child's long-term best interests." *Ruden v. Peach*, 904 N.W.2d 410, 414 (Iowa Ct. App. 2017). Iowa Code section 598.41(3) (2017) specifies factors to be considered in determining custody arrangements. We also consider a number of other factors, including who has historically cared for the children, the ability of the parents to communicate and be respectful, the degree of conflict between the parents, and how much the parents generally agree about their approach to daily matters. *In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007). Our core objective, in considering the factors, is to place the children in the environment most likely to bring them to healthy physical, mental, and social maturity. *See In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Although we are not bound by them, we give weight to the trial court's assessment of credibility, as it is greatly helped in making a wise decision by listening to the parties testify in person, while we only review a written record. Iowa R. App. P. 6.904(3)(g); *In re Marriage of Vrban*, 359 N.W.2d 420, 423–24, (Iowa 1984).

The district court held both parents are suitable custodians. We agree. Both parents clearly love M.J.H. and would be suitable caretakers. Each is able to bring M.J.H. to healthy physical, mental, and social maturity. Each has been active in M.J.H.'s life and cared for her before and since the separation. Like the district court, we find the parents would be good candidates for joint physical care. However, Jeff testified he did not think shared physical care would work with M.J.H. in daycare and school in Cedar Falls while he lived in Grundy Center, and resisted the possibility of relocating to Cedar Falls himself. Jeff was only interested in shared care if M.J.H. attended Grundy Center schools. Jeff's future plans for M.J.H. centered exclusively on the child growing up in Grundy Center in the same way he grew up, with little to no flexibility for M.J.H. to attend school elsewhere.

We must decide custody based on the record at the time of trial, and based on this record we find joint physical care will not work at this time. When joint physical care is not feasible we must grant physical care to one parent and visitation rights to the other. *In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007). Courts typically afford weight to the parent who has acted as the child's primary caretaker. *Ruden*, 904 N.W.2d at 414–15.

Renae demonstrated the ability and willingness to facilitate the relationship between M.J.H. and Jeff, and has made efforts to maintain open communication with Jeff. Jeff has been less consistent in his communication and responses to Renae. Renae has been the primary caregiver for M.J.H. Jeff has a stable job and a deep support network in Grundy Center. Renae has a more consistent daily and weekly work schedule conducive to facilitating M.J.H.'s school, appointments,

and extracurricular activities. Jeff's schedule can be flexible during summer and winter, but during busy season he has to work long hours and is less flexible.

Both Jeff and Renae indicated Grundy Center did not have rental housing available for their needs. Following the foreclosure of the marital home, Renae moved to Cedar Falls to find suitable housing and employment, turning down more distant employment opportunities to keep M.J.H. close to Jeff. Jeff did not indicate a willingness to commute to Grundy Center from Cedar Falls so he could be closer to M.J.H. and showed a strong tendency to rely on help from his family and friends in taking care of M.J.H. Renae told the court that her primary concern was to be a good parent to M.J.H. and to keep her close to her father.

Overall, Renae indicated far greater flexibility and determination to maintain the relationship between Jeff and M.J.H., while Jeff seemed intent on keeping himself and M.J.H. in Grundy Center with his support network. We conclude, as did the district court, the best interest of M.J.H. will be advanced by awarding physical care to Renae, with substantial visitation for Jeff. We affirm the dissolution decree.

## IV.   Appellate Attorney Fees

Renae requests appellate attorney fees. The award of appellate attorney fees is not a matter of right but instead rests in our discretion. *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006) (quoting *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005)). "We also consider whether a party was obligated to defend the district court's decision." *Christy v.*

*Lenz*, 878 N.W.2d 461, 469 (Iowa Ct. App. 2016). After considering the parties' positions, we find Jeff has the capacity to pay some attorney fees over time. We award Renae $1500 in appellate attorney fees, to be paid by Jeff before December 31, 2018.

**AFFIRMED.**