**IN THE COURT OF APPEALS OF IOWA**

No. 22-1516
Filed April 26, 2023

**IN RE THE MARRIAGE OF SHELLY I. SCHROEDER
AND AARON P. SCHROEDER**

**Upon the Petition of
SHELLY I. SCHROEDER,**
　　　　Petitioner-Appellant,

**And Concerning
AARON P. SCHROEDER,**
　　　　Respondent-Appellee.

_____

Appeal from the Iowa District Court for Greene County, Adria Kester, Judge.

Shelly Schroeder appeals the amount of spousal support and attorney fees

awarded in the decree dissolving her marriage to Aaron Schroeder. **AFFIRMED.**

Nicole S. Facio of Newbrough Law Firm, LLP, Ames, for appellant.

Vicki R. Copeland of Copeland Law Firm, P.L.L.C., Jefferson, for appellee.

Considered by Vaitheswaran, P.J., and Greer and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Shelly Schroeder appeals the amount of spousal support and attorney fees awarded in the decree dissolving her marriage to Aaron Schroeder. She asks us to increase her spousal support award and trial attorney fees. She also requests an award of her appellate attorney fees. Balancing Shelly's needs and Aaron's ability to pay, we affirm the award of spousal support. Because the district court exercised its discretion in only awarding Shelly part of her trial attorney fees, we affirm. We decline to award appellate attorney fees.

Shelly and Aaron were married for twenty-six years and have two children together. When they married, Shelly had an associate's degree and Aaron was in the military. After his honorable discharge one year later, Aaron completed a mortuary program and earned his associate's degree.

During the first four years of the marriage, Shelly did not earn more than $15,000 per year. With the birth of their first child in 2000, Shelly stopped working outside the home and devoted herself to parenting fulltime. She supplemented the family income by providing some childcare in her home and substitute teaching. At the time of trial, Shelly worked as a substitute teacher, earning $10 per hour. If Shelly worked fulltime in this position, she would earn $20,800 per year.

Aaron worked several different jobs over the years to meet the family's financial obligations, including working in the funeral home industry. When the opportunity arose in 2008, Aaron and Shelly bought a funeral home. As the sole employee, Aaron worked demanding hours while Shelly cared for the children and maintained the home. The venture succeeded enough that they were able to purchase a second funeral home in 2014 and a third in 2017. Shelly calculated

Aaron's annual income at the time of trial to be $516,090,[1] which the court accepted.

Shelly petitioned to dissolve the marriage in 2021. Although the parties agreed on issues of child custody and support, trial was necessary to determine the property division and spousal support. Shelly asked for $8500 per month in spousal support until either party's death or her remarriage. Aaron proposed the continuation of the $3000 spousal support payments he made under the court's temporary order, which would terminate on either party's death or Shelly's remarriage or cohabitation.

In its decree, the district court awarded Aaron property valued at $669,480, awarded Shelly property valued at $82,837, and ordered Aaron to equalize the award by paying Shelly $283,322. The court then considered the "sizeable cash equalization award" in awarding Shelly $3500 per month in spousal support until either party's death or Shelly's remarriage. Although the award was less than Shelly requested and more than Aaron proposed, the court found "it will best provide Shelly with a standard of living reasonably comparable to what she enjoyed during the marriage while accounting for Aaron's ability to pay in relation to his other expenses." It also awarded Shelly $5000 of the $25,000 in trial attorney fees she requested.

---

[1] The parties set up an S-corporation for the funeral home business and a separate limited liability company for the real estate properties. Shelly calculated Aaron's earnings by combining the income from all sources, including the annual wages the corporation pays Aaron, the net business income from the funeral homes, the net rental income from the real estate property, and his Veteran's Administration payments.

Shelly appeals, challenging the amount of spousal support the court awarded her. Aaron argues the award was equitable and asks us to affirm. We review dissolution proceedings de novo. *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). We give weight to the district court's fact findings although they are not binding. *Id.*

Iowa Code section 598.21A(1) (2021) lists the factors the court must consider in determining whether to award spousal support. *In re Marriage of Mann*, 943 N.W.2d 15, 20 (Iowa 2020). They include the length of the marriage, the age and health of the parties, the property award, the earning capacity of the party seeking maintenance, and any other factors the court deems relevant. *See* Iowa Code § 598.21A(1); *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486–87 (Iowa 2012) (stating an award of spousal support depends on the circumstances of each case and factors the comparative earning capacities of the parties). The circumstances before us support an award of traditional spousal support. *See In re Marriage of Gust*, 858 N.W.2d 402, 410–11 (Iowa 2015) (noting the courts are more likely to award traditional spousal support in marriages lasting over twenty years, especially if one spouse leaves the workplace to care for the children).

The question is whether the spousal support award of $3500 per month is equitable. The amount of traditional spousal support awarded "is primarily predicated on need and ability." *In re Marriage of Pazhoor*, 971 N.W.2d 530, 543 (Iowa 2022) (citation omitted). In making this determination, we look at the parties' earning capacity rather than actual earnings. *Id.* Ideally, the award should be fixed so both parties can continue at the standard of living they enjoyed during the marriage. *Id.*

Unsurprisingly, the parties disagree as to Shelly's need and Aaron's ability to pay. Shelly lists expenses totaling $10,867 per month, while Aaron argues that Shelly went on a spending spree during the proceedings and inflated her expenses. On this issue, the court agreed with Aaron:

> After Shelly filed for divorce, she began spending more money than she had previously. Shelly received alimony in the amount of $3000 per month following the temporary order yet continued to open new credit cards to "sustain my living expenses." . . . Shelly's claim that she needs more money to "maintain" her lifestyle is not supported by the evidence. She is spending significantly more since the parties separated, as admitted during her trial testimony . . . .

It also noted that Shelly's "spending post-filing was not consistent with her spending during the marriage." Because the trial court had a greater ability to assess the evidence and credibility of the witnesses, we defer to its finding. *See Neimann v. Butterfield*, 551 N.W.2d 652, 654 (Iowa Ct. App. 1996) (stating that we accord deference to the trial court's superior ability to assess credibility because it observes demeanor and appearance firsthand).

On the question of the parties' earnings, the court credited Shelly's evidence. Although Aaron insists that Shelly could earn $15 per hour or $31,200 annually, the court found no evidence showing the feasibility of her earning that amount based on how long she was removed from the workforce. Instead, the court imputed income of $20,800 to Shelly based on what she would earn as a fulltime substitute teacher. Adding the $3500 spousal-support payment to her imputed earnings, Shelly's adjusted net monthly income is $4995.

The court also adopted Shelly's calculation of Aaron's income at $516,090 per year. Subtracting the $3500 spousal-support payment from this amount, Aaron's adjusted net monthly income is $23,307. Aaron claims that the $516,090

income figure includes all income earned by the businesses and that, at the time of trial, $13,133 of that business income went toward paying the monthly principal on business debts. Subtracting the principal for the business debts from his adjusted net monthly income would leave Aaron with $10,174 after paying spousal support, an amount roughly equal to the total monthly expenses listed on his affidavit of financial status.[2] Aaron attempts to reduce his income—and his spousal-support obligation—by deducting business debts from his personal income. On our de novo review, we agree with the district court's calculation of his income.

The trial court has "considerable latitude" in fashioning an award of spousal support. *Mann*, 943 N.W.2d at 20 (citation omitted). Because it "was in the best position to balance the parties' needs, . . . we should intervene on appeal only where there is a failure to do equity." *Gust*, 858 N.W.2d at 416. On our de novo review, we agree that spousal support is necessary for Shelly to maintain the standard of living she enjoyed during the marriage. Because Aaron's income surpasses his monthly expenses, he has ample ability to pay. And there is a disparity between the parties' incomes. Although the $283,322 equalization payment reduces the disparity, we believe the amount of spousal support awarded

---

[2] Aaron designates $1000 of his $10,339 in monthly expenses for the children's "expenses/activities." At the time of trial, the elder child was in college and the younger child was entering her final year in high school. We note that the decree requires Shelly to pay $581 per month in child support until the younger child graduates high school. Aaron's expenses also include $1500 for the children's college expenses, though the decree does not order Aaron to pay a postsecondary education subsidy to the older child. The court retained jurisdiction to determine the need for a postsecondary education subsidy for the younger child.

by the district court is appropriate to address the remaining disparity. We affirm the decree's provisions on spousal support.

Shelly also contends she should be awarded $25,000 in her trial attorney fees rather than the $5000 awarded by the district court. We review the district court's award of trial attorney fees for an abuse of discretion. *In re Marriage of Towne*, 966 N.W.2d 668, 680 (Iowa Ct. App. 2021). "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *Id.* (citation omitted). Although the court noted that Aaron has a greater ability to pay attorney fees than Shelly, it found awarding her the full amount she requested would be inequitable based on the amount of the cash equalization payment and spousal support Aaron was ordered to pay her. Because the court's decision rests on reasonable grounds, we affirm the award of $5000 in trial attorney fees.

Finally, Shelly asks us to award her appellate attorney fees and expenses totaling $8410. Appellate attorney fees are not a matter of right. *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). We may award appellate attorney fees based on the needs of the party seeking the award, the other party's ability to pay, and the merits of the claims made on appeal. *Id.* We decline to award appellate attorney fees.

**AFFIRMED.**