**IN THE COURT OF APPEALS OF IOWA**

No. 22-1954
Filed November 21, 2023

**IN RE THE MARRIAGE OF KITTY LEE CLASING
AND KEVIN RICHARD CLASING**

**Upon the Petition of
KITTY LEE CLASING,**
    Petitioner-Appellee,

**And Concerning
KEVIN RICHARD CLASING,**
    Respondent-Appellant.
_____

    Appeal from the Iowa District Court for Cerro Gordo County, Chris Foy,

Judge.


    Kevin Clasing appeals the financial provisions of the decree dissolving his

marriage to Kitty Clasing. **AFFIRMED.**


    Richard N. Tompkins Jr. of Tompkins Law Office, Mason City, for appellant.

    Kelsey Deabler of Iowa Legal Aid, Council Bluffs, for appellee.


    Considered by Bower, C.J., and Buller and Langholz, JJ.

**BOWER, Chief Judge.**

Kevin Clasing appeals the financial provisions in the decree dissolving his marriage to Kitty Clasing. Upon our review, we affirm.

## I. Background Facts and Proceedings

Kevin and Kitty married in 1989. Following allegations of domestic abuse on both sides, Kitty filed for divorce in 2022. At the time of dissolution, Kitty was seventy-five and suffering from terminal blood cancer. Her only source of income was her social security payments, totaling $320 per month and temporary spousal support of $1200. Kevin was sixty-two and worked part-time as a computer repairman, though he had been without gainful employment for about two years. Kevin had recently inherited $480,000 from his father.

A dissolution decree entered in September 2022 awarded Kevin $165,220 of the marital estate. The district court awarded Kitty $216,765 of the marital estate and $1000 per month in spousal support. Kevin appeals, claiming the division of assets and award of spousal support are inequitable.

## II. Timeliness of Appeal

As a preliminary matter, Kitty argues Kevin's appeal should be dismissed as untimely. "A notice of appeal must be filed within [thirty] days . . . of the final order . . . ." Iowa R. App. P. 6.101(1)(b). The district court filed its final ruling on this matter on October 24, 2022. Kevin filed this appeal on November 28, thirty-five days later. We take judicial notice of a court holiday on November 23 and the Thanksgiving holiday tolling the appeal deadline here to November 28. *See* Iowa Code § 4.1(34) (2021). Accordingly, the appeal is timely.

### III.    Standard of Review

We review dissolution cases, which are tried in equity, de novo.  Iowa R. App. P. 6.907; *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 483–84 (Iowa 2012).  While we give weight to the factual findings of the district court, especially when considering the credibility of witnesses, we are not bound by them.  Iowa R. App. P. 6.904(3)(g).

Although our review is de novo, we allow the district court considerable latitude in awarding spousal support.  *In re Marriage of Pazhoor*, 971 N.W.2d 530, 537 (Iowa 2022).  Because the district court is in a better position to balance the parties' needs, "we should intervene on appeal only where there is a failure to do equity."  *In re Marriage of Gust*, 858 N.W.2d 402, 416 (Iowa 2015).

### IV.    Division of Marital Assets and Liabilities

Kevin first challenges the district court's division of marital property as inequitable.  Kevin argues, rather than awarding Kitty the house, the court should have forced a sale or placed a lien on the house, resulting in a more equal division of assets.

The parties in a dissolution action "are entitled to a just and equitable share of the property accumulated through their joint efforts."  *In re Marriage of O'Rourke*, 547 N.W.2d 864, 865 (Iowa Ct. App. 1996).  Iowa law does not require an equal division but "what is fair and equitable in each circumstance."  *In re Marriage of Campbell*, 623 N.W.2d 585, 586 (Iowa Ct. App. 2001).  "Equitable distributions require flexibility and concrete rules of distribution may frustrate the court's goal of obtaining equitable results."  *In re Marriage of Driscoll*, 563 N.W.2d 640, 642 (Iowa

Ct. App. 1997). Thus, "it is inherent in the court's equitable powers, to make appropriate adjustments, according to the unique facts of each case." *Id.*

In determining the equitable division of marital assets, the district court found while "Kevin contributed more to the financial support of the parties . . . Kitty contributed more to keeping the home." With Kevin's support, she also provided daycare for her grandchildren starting at age fifty. Kitty also brought the home into the marriage. Considering these factors, the district court concluded "it is fair and equitable to award [Kitty] slightly more of the marital net worth . . . ." As a result, the district court made the following award:

| Marital Asset or Debt | To Kitty | To Kevin |
|---|---|---|
| Home | $155,000 | |
| 2014 Ford Escape | $18,705 | |
| Loan on Ford Escape | ($17,205) | |
| Cash value, life insurance policy | $41,310 | |
| Cash value, life insurance policy | | $63,505 |
| Checking account | $5195 | |
| Savings accounts | $3285 | |
| IRA | $20,000 | $111,170 |
| Personal property | Equally Divided | Equally Divided |
| Account owed for heating and cooling | | ($4455) |
| Credit card 1 | ($6135) | |
| Credit card 2 | ($3390) | |
| Credit card 3 | | ($5000) |
| **TOTAL MARITAL NET WORTH AWARDED** | $216,765 | $165,220 |

We agree with the district court's analysis. "An equitable distribution of marital property, based upon the factors in [Iowa Code section] 598.21(5), does not require an equal division of assets." *In re Marriage of McDermott*, 827 N.W.2d 671, 682 (Iowa 2013) (citation omitted).

The parties have both contributed to the marriage. Kitty's role as homemaker and the labor expended in that role match Kevin's financial

contributions to the marriage. Therefore, an equitable division would, at first glance, require an even split of the marital property. Yet given the totality of the circumstances, an even split would leave Kitty in a very unfavorable position. Requiring her to leave her home of forty-five years or having a potential threat of foreclosure in the face of a terminal illness with significantly diminished earning capacity would not be equitable.

Kevin also argues Kitty was inequitably awarded $20,000 from Kevin's IRA. He argues since he deposited $30,000 in the account from funds he inherited from his father, he should receive credit for the inheritance, thereby denying Kitty any funds from the IRA. Inherited property is not divisible unless a refusal to divide the property would be inequitable. Iowa Code § 598.21(6).

We find Kevin's inheritance contributions should not preclude Kitty from receiving $20,000 from the IRA. The IRA was worth $131,170 at the time of trial. Subtracting Kevin's inheritance-based contributions brings the value to $101,170. Of this $101,170, Kitty received $20,000—substantially less than half the value. We find the award of a portion of the IRA to be appropriate.

We find the district court equitably apportioned marital assets and liabilities.

## V. Spousal Support

Kevin next claims the district court erred in ordering permanent spousal support payments of $1000 per month. Kevin argues the court miscalculated his earning potential when determining whether spousal support was appropriate. As this court recently noted:

> Unlike child support, we do not operate under spousal-support guidelines. Instead, we do equity based on the statutory criteria. Those criteria include: "[t]he length of the marriage"; "[t]he age and

physical and emotional health of the parties"; "[t]he distribution of property"; "[t]he educational level of each party"; "[t]he earning capacity of the party seeking maintenance"; "[t]he feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal"; and "[t]he tax consequences to each party."

*In re Marriage of Cichon-Barche*, No. 22-0962, 2023 WL 3335423, at *6 (Iowa Ct. App. May 10, 2023) (quoting Iowa Code § 598.21A). Iowa recognizes four types of spousal support: rehabilitative, reimbursement, traditional, and transitional. *Pazhoor*, 971 N.W.2d at 545. Traditional spousal support, at issue here, is meant to provide the receiving party with a standard of living comparable to what she would have enjoyed if the marriage had continued. *Gust*, 858 N.W.2d at 412. Marriages of twenty or more years merit "serious consideration for traditional spousal support." *Cichon-Barche*, 2023 WL 3335423, at *6 (citing *In re Marriage of Sokol*, 985 N.W.2d 177, 185 (Iowa 2023)). Traditional support is often indefinite but can end if the payee shows the capacity to satisfy their needs or it would be equitable to require the payee to bear the burden of decreased income. *Id.*

The district court found the circumstances required an award of traditional spousal support:

> The parties have been married for over [thirty] years. For most of the marriage, Kevin was the primary breadwinner for the parties. Due to her poor health and cancer diagnosis, the earning capacity of Kitty is very limited. While it is clear to the court that equity demands Kevin continue to provide Kitty with support, the amount to be paid is more difficult to decide. At the time of trial, Kevin was not employed and had no regular source of income. Even if Kevin was still working . . . his earnings would not be sufficient to allow each of the parties to maintain the same standard of living following their divorce as the parties enjoyed while they were still together. Consequently, the court has focused on the income or other revenue that each of the parties can reasonably expect to receive following the dissolution of the marriage.

We agree with the amount of spousal support awarded.  Kitty's potential income, including social security payments from her ex-husband, future social-security payments by Kevin, and rental payments if she were to rent out a room in her house, totals $2000 per month.  Kevin's potential income, including future social-security payments and his earning potential should he become re-employed, totals $4200 per month.  In order to put both parties in roughly the same position, we agree it is equitable to require Kevin to pay $1000 per month.

Kevin argues he cannot find gainful employment at age sixty-two.  He claims even if he found employment, the court should assume he would make the federal minimum wage of $7.25 per hour.  This argument is unpersuasive.  Kevin has a bachelor's degree and more than forty years of work experience.  The district court imputed a potential salary of $36,400, significantly less than Kevin's $50,000 salary in 2020.  Kevin would not have to settle for $7.25 an hour given his education and experience.

After weighing all pertinent factors, we find the district court equitably distributed marital assets and awarded spousal support.  Spousal support of $1000 will allow Kitty to obtain a standard of living more like that she enjoyed during marriage.

The costs of this appeal are assessed equally.

**AFFIRMED.**