# IN THE COURT OF APPEALS OF IOWA

No. 18-1535
Filed August 7, 2019

IN RE THE MARRIAGE OF MISHA LEA CURTIS
AND MARK WADE CURTIS

Upon the Petition of
**MISHA LEA CURTIS,**
        Petitioner-Appellee,

**And Concerning**
**MARK WADE CURTIS,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Adams County, John D. Lloyd,

Judge.

        Mark Curtis appeals a decree of dissolution of marriage. **AFFIRMED AS
MODIFIED AND REMANDED.**

        Mark D. Fisher of Nidey Erdahl Fisher Pilkington & Meier, PLC, Cedar

Rapids, for appellant.

        Rodney K. Maharry, Clive, and Jami J. Hagemeier of Williams & Hagemeier,

P.L.C., Des Moines, for appellee.

        Considered by Doyle, P.J., Mullins, J., and Vogel, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MULLINS, Judge.**

Mark Curtis appeals the decree dissolving his marriage to Misha Curtis. Mark challenges the spousal-support, child-support, property-distribution, and visitation provisions of the decree, as well as the court's award of trial attorney fees in favor of Misha. Misha requests an award of appellate attorney fees.

I.      **Background Facts and Proceedings**

Affording deference to the district court's factual findings and credibility determinations in our de novo review of this equitable proceeding, we make the following factual findings. The parties met in 2004 and married in 2005. The marriage produced two children, I.C. and A.C., respectively born in 2006 and 2008. Misha has another child from a prior marriage, E.A., born in 2001, who resided with the parties during the marriage.

Mark has an associate's degree in information technology. Misha has college degrees in animal science and nursing. Both are in good health. Mark started his own heating-and-cooling business in 2005; the parties are equal owners of the business. The parties jointly purchased a hardware store in 2012. Prior to purchasing the hardware store, Misha worked as a nurse. The parties mutually agreed Misha would cut back on her hours working as a nurse and devote more of her time to the hardware store. In 2013, a bakery was established in a building attached to the hardware store, which is also jointly owned by the parties.[1] The parties are also the joint owners of a limited liability company (LLC) which owns the buildings in which the heating-and-cooling, hardware-store, and bakery

---

[1] The income generated by the bakery runs through the hardware store.

businesses are housed. The parties also purchased two rental properties on contract.

When the parties purchased the hardware store in 2012, they ran it together. In 2013, an employee of the heating-and-cooling business quit, and Mark focused his efforts on that business, which resulted in Misha running the hardware store. Misha had also run the bakery since its inception in 2013. This dynamic continued until around October 2016, when the parties agreed Mark would discontinue the heating-and-cooling business. At this point, Mark decided he wanted to pursue employment as an electrician. Mark was unable to find a local job, but he found an electrician job in Minnesota, which included a substantial increase in pay. Mark maintained this employment until July 2017. During this period, Mark lived in Minnesota and only visited the family on weekends. He then moved back to Iowa and began working as an electrician for another employer. Mark was terminated from this position in October. Mark then began receiving unemployment. While receiving unemployment, Mark began rebuilding the heating-and-cooling business.

At the time of trial, Misha was pursuing her master's degree in nursing education and was twenty credits away from obtaining the same. Misha continues to work as a nurse at Greater Regional Medical Center, but only on an as-needed basis, which is usually about once every six weeks. She earns $29.00 per hour and brings in between $4000 and $5000 per year from nursing. Her primary employment is at the hardware store and bakery. She makes about $1050 per month from those businesses. Misha is also a nursing educator. She teaches eight hours per week from January through May and earns $29.50 per hour, which

amounts to annual income of $4720. Finally, Misha earns in the neighborhood of $3900 per year working at a summer camp. Misha conceded in her testimony she could earn significantly more money as a nurse if she did not have to manage the businesses.

Mark moved out of the marital home in September 2017. Shortly thereafter, Misha petitioned for dissolution of the parties' marriage. In December, Misha moved for a temporary-matters hearing concerning temporary custody and financial matters. The parties submitted child-support-guidelines worksheets and affidavits of financial status. Misha sought physical care while Mark sought shared care. Misha identified her gross annual income as $26,000[2] and imputed income to Mark in the amount of $70,000. Mark identified Misha's gross annual income as $32,000 and his as $35,516.[3]

In February 2018, the court entered a temporary order granting the parties joint legal custody and awarding physical care to Misha, subject to visitation for Mark every other weekend and every Tuesday and Thursday evening from 4:00 to 8:00 p.m.[4] The court ordered Mark to pay temporary child support in the amount of $744.55.[5]

---

[2] Misha's affidavit of financial status noted her sources of income were the hardware store, from which she received $16,000 per year, and a hospital and community college from which she collectively received $10,000 per year.

[3] In his affidavit of financial status, Mark indicated his only source of income to be "unemployment," from which he received $2959.66 per month.

[4] The temporary-matters order provided Mark's weekend visitation would be from 9:00 a.m. on Saturday until 8:00 p.m. on Sunday through the end of March. Thereafter, Mark's weekend visitation would be from Friday after school, or 6:00 p.m. on non-school days, until 6:00 p.m. on Sunday.

[5] The record does not include the figures used by the district court in determining temporary support.

Trial was held over four days in May and June. The court entered its findings of fact, conclusions of law, and order in August. The court's distribution of assets and liabilities[6] amounted to net assets in the amount of $333,920 for Mark—which included all the business assets and rental properties—and $7563 for Misha. The court ordered Mark to pay Misha an equalization payment in the amount of $150,000, shifting the net assets for Mark to $183,920 and for Misha to $157,563. As part of its property distribution, the court additionally ordered Mark to pay for $20,000 of Misha's attorney fees, further reducing his net assets from the property distribution to $163,920.

Because the "property division . . . effectively removed [Misha] from the work force" and she was in the process of obtaining her master's degree which would give her a source of income from teaching, the court awarded Misha rehabilitative spousal support for three years. The court ordered Mark's monthly spousal-support obligation to be $3000 for the first year, $2000 for the second year, and $1000 for the third year.

The court awarded Misha physical care of the children and provided Mark with visitation every other weekend from Friday afternoon through Sunday evening, three-and-one-half hours one weeknight per week, alternating holidays, and two weeks in the summer. As to child support, the parties agreed in their amended child-support-guidelines worksheets that Mark's gross annual income amounted to $70,000.[7] In calculating child support, the court adopted this figure

---

[6] The court subsequently amended its property distribution to correct the valuation of a horse. The figures provided are derived from the property distribution as amended.
[7] However, in his post-trial statement of requested relief, Mark asserted his annual income to be $40,000.

and added an additional $10,000 in estimated income for the hardware store business to reach a gross annual income for Mark of $80,000. Aside from her income from spousal support, the court determined Misha's gross annual income to be $5000. Based upon these figures, and considering the reduction in Mark's spousal-support obligation after one year, the court determined Mark's child support obligation to be $621.24 as of August 2018 and $850.29 as of October 2019. In light of the "many moving parts" and the fact that Misha's income will undoubtedly increase, the court directed the parties, beginning in 2020, to exchange financial information.

The court also revisited Mark's child-support obligation under the temporary order. The court stated:

> It appears without doubt that [Mark] failed to disclose his unemployment income on his financial information provided to the court for the temporary matters hearing. Inclusion of that income with the income he was generating from his heating and cooling business would have produced a significantly higher child support award.

In light of the court's determination, it recalculated Mark's child-support obligation as to the six months the temporary-matters order was in place, and entered judgment against Mark and in favor of Misha in the amount of $2051.76, the difference between what Mark was ordered to pay under the temporary-matters order and what the court determined he should have been paying.

The court directed Misha's counsel to prepare a decree incorporating its findings and submit it to Mark's counsel for approval, after which it would be presented to the court. The court ultimately entered its decree, incorporating the foregoing. The decree was subsequently amended as to matters generally

irrelevant to this appeal in response to the parties' post-trial motions to enlarge or amend pursuant to Iowa Rule of Civil Procedure 1.904(2). As noted, Mark appeals.

## II. Standard of Review

Appellate review of dissolution cases is de novo. Iowa R. App. 6.907; *In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018). While we give weight to the factual findings of the district court, especially when considering the credibility of witnesses, we are not bound by them. Iowa R. App. P. 6.904(3)(g); *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). Because the court bases its decision on the unique facts of each case, precedent is of little value. *In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009).

## III. Analysis

### A. Income of the Parties

First, Mark argues the annual incomes used by the district court in awarding spousal support and calculating child support—$80,000 for Mark and $5000 for Misha—are unsupported by the evidence. As to Mark's income, Mark only complains of the district court assigning him income of $10,000 attributable to his receipt of the business assets in the property distribution. The court must determine income for child-support purposes "from the most reliable evidence presented." *In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991). Being the recipient of the business assets, the court estimated Mark's income would increase by $10,000. As noted, Misha was receiving $12,600 in annual income from the hardware store and bakery at the time of trial. Additionally, Mark received the parties' two rental properties, which, given Mark's clear financial motivations, will undoubtedly result in additional income. An assignment of additional income

to Mark in the amount of $10,000 is well within the range of evidence—and actually fell on the lower end of the permissible range—and, consequently, we will not disturb it. *Cf. In re Marriage of Keener*, 728 N.W.2d 188, 194 (Iowa 2007) ("A trial court's valuation will not be disturbed when it is within the range of evidence.").

Mark complains the district court supported Misha's plans to complete her master's degree rather than requiring her to work full time. Although the marriage is dissolved, we agree with the district court that the progress made toward the master's degree during the marriage has a value to the parties that should not be abandoned. The completion of the degree has the potential to reap benefits to Misha, even to Mark, and certainly to the children. Mark's argument to abandon the master's degree is short-sighted, at best.

On our de novo review, however, we find the evidence supports a different calculation of Misha's income during the remaining educational period than that determined by the district court. Although somewhat unclear, the record seems to indicate, and the district court appears to have assumed, that Misha would not be returning to full-time employment but would instead be focusing on obtaining her master's degree before returning to full-time employment as a post-secondary educator. With this in mind, the court assigned Misha annual income in the amount of $5000, attributable to nursing on a part-time basis. The court did not include the income Misha has historically earned as a part-time teacher and from working at a summer camp, presumably while she had been taking classes and progressing on the master's degree. Upon our consideration of the historical evidence presented, we determine Misha's actual annual income for the purpose of child

support would be not less than $13,120.[8]  We note Misha's progress on her master's degree was made while working full time at the hardware store and bakery, in addition to the three part-time jobs just referenced.  We are convinced that she could, and likely would, work additional nursing hours and therefore impute to her an additional $8000 in annual income, for a total income of $21,120, while she finishes her master's degree.

B.    Spousal Support

Mark challenges the district court's award of spousal support to Misha as inequitable.  The court fashioned its award of spousal support as rehabilitative in nature.  Mark takes the position that Misha is readily capable of self-support and has no need for spousal support.  "A trial court has considerable latitude when making an award of spousal support." *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486 (Iowa 2012).  We will only disturb the award if it fails to do equity between the parties.  *Id.*

The district court may grant an award of spousal support in a dissolution proceeding for a limited or indefinite length of time after considering all of the following factors:

> (a) The length of the marriage.
> (b) The age and physical and emotional health of the parties.
> (c) The distribution of property made pursuant to section 598.21.
> (d) The educational level of each party at the time of marriage and at the time the action is commenced.
> (e) The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and

---

[8] This figure includes $4500 from nursing, $4720 from teaching, and $3900 from the summer camp.

the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.

(f) The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.

(g) The tax consequences to each party.

. . . .

(j) Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1) (2017). Iowa law is clear "that whether to award spousal support lies in the discretion of the court, that we must decide each case based upon its own particular circumstances, and that precedent may be of little value in deciding each case." *In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015).

Rehabilitative spousal support is "a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating an incentive and opportunity for that spouse to become self-supporting." The goal of rehabilitative spousal support is self-sufficiency and for that reason "such an award may be limited for extended depending on the realistic needs of the economically dependent spouse."

*In re Marriage of Becker*, 756 N.W.2d 822, 826 (Iowa 2008) (citations omitted).

In awarding Misha rehabilitative spousal support, the district court explained:

[Misha] is fully capable of self-support and has no health issues that would get in the way. However, the court's property division has effectively removed [her] from the work force except for her occasional shifts as a nurse. She is close to completing her master's degree in nursing that will give her a source of income from teaching. She needs 20 credits to complete it. Depending on job availability, she may be able to expand the number of hours she is working as a nurse but that expansion must not detract from her ability to complete her education.

We have addressed actual and imputed income above, and find $21,120 is a reasonable annual income for spousal-support purposes. Upon consideration of

the circumstances in this case and the factors contained in Iowa Code section 598.21A(1), we agree with Mark that the award of spousal support in favor of Misha was excessive in both duration and amount and results in an inequity between the parties. While it is likely Misha will finish her master's program within one year of the dissolution and may need a short transition time thereafter to find full-time employment, the record does not include evidence that Misha is in need of spousal support in the amount or duration awarded by the district court; we also question Mark's ability to pay the award. *See, e.g.*, *In re Marriage of Stenzel*, 908 N.W.2d 524, 533 (Iowa Ct. App. 2018) (noting the amount and duration of spousal support is "primarily predicated" on need and the ability to pay). Considering the circumstances and factors, we modify the spousal support award in favor of Misha to $1000 per month for one year from the time the decree was entered, followed by $500 per month for six months.

### C. Child Support

A recalculation under the current guidelines,[9] amounts to a child-support obligation for Mark in the amount of $910.81 per month.[10] We modify Mark's child-support obligation under the decree to that amount. Given the limited duration of

---

[9] *See* Iowa Ct. R. 9.1 ("The child support guidelines contained in this chapter are hereby adopted, effective January 1, 2018. The guidelines shall apply to cases pending January 1, 2018."); *In re Marriage of Roberts*, 545 N.W.2d 340, 343 n.2 (Iowa Ct. App. 1996) (noting pending cases for purposes of child support guidelines include those pending on appeal).

[10] In our calculation, we use annual incomes for Mark in the amount of $80,000 and $21,120 for Misha. We then deduct $12,000 in annual spousal support ($1000 per month) for Mark and add the same for Misha. *See* Iowa Ct. R. 9.5(1)(a)(1). Mark does not challenge the tax designations used by the district court, so we use those variables in our calculation—Mark filing as single and claiming one tax dependent and Misha filing as head of household and claiming two tax dependents and being awarded a qualified-additional-dependent deduction.

Misha's spousal-support award coupled with an anticipated increase in her income, we remand the matter to the district court for a determination of Mark's child-support obligation after his spousal-support obligation reduces to $500 per month, also presuming Misha's income will have increased by that time. The foregoing support obligation shall apply to the duration between the entry of the decree and the time the district court enters an order identifying Mark's future support obligation.

Mark also argues the court erred in retroactively modifying the temporary child-support order. First, Mark argues the court was without authority to modify the temporary order because it was an appealable order which was not appealed. A temporary order setting child support is a final judgment that is appealable as a matter of right. *See, e.g.*, *In re Marriage of Roberts*, No. 07-0515, 2008 WL 4725158, at *2 (Iowa Ct. App. Oct. 29, 2008); *In re Marriage of Laughlin*, No. 05-0516, 2006 WL 228985, at *1 (Iowa Ct. App. Feb. 1, 2006); *In re Marriage of Lee*, No. 99-1720, 2000 WL 1289144, at *3 (Iowa Ct. App. Sept. 13, 2000); *O'Hara v. Lukemyres*, No. 99-0185, 2000 WL 18856, at *2 (Iowa Ct. App. Jan. 12, 2000). While we agree with Misha the court may correct, vacate, or modify a final judgment or order to "right a wrong" resulting from Mark's dishonesty, the court may only do so "[u]pon timely petition and notice under rule 1.1013." Iowa R. Civ. P. 1.1012. Those procedures were not followed here. While a de novo review of the record makes abundantly clear that Mark was less than candid with the court concerning his income in relation to the temporary-matters hearing,[11] we find

---

[11] The district court concluded Mark failed to disclose his unemployment income. We agree with Mark that this conclusion was incorrect. However, the record shows Mark failed

correction or modification of the prior final judgment was not properly before the court, and the court's sua sponte retroactive modification of the temporary-matters order was therefore error. We therefore modify the decree to vacate the portions that retroactively modified Mark's child-support obligation under the temporary-matters order.

D.    Property Distribution

Mark challenges the district court's property distribution. He does not dispute any of the court's valuations of property; he only challenges the district court's decision to award him all of the business assets. However, while Mark stated his willingness in his testimony to allow Misha to receive all of the business assets, other than the heating-and-cooling business, Mark's principal request was that he not be liable for any business debts he could not control, this coming after Misha's testimony that she would generally be unable to refinance the business debts in order to relieve Mark from any liability in relation thereto. When asked what he would like the court to do in the event Misha could not refinance the business to relieve him of liability within ninety days, Mark responded, "To award them to me or to sell them." While Mark later noted that he "would rather everything be sold," he continued to testify to his willingness to receive the business assets as a going concern so long as he would "be in control." He also stated his ability to pay Misha her share of the equity with a check. The court granted Mark's

---

to disclose other income he was clearly receiving. Specifically, Mark was receiving $400 per month for rent from a tenant. He was also making money through the heating-and-cooling business. We note the court's incorrect conclusion causes us no pause in adopting as our own the district court's "serious concerns" for Mark's credibility and observation that "[i]t is clear he is willing to lie in court proceedings."

alternative request in full. Mark cannot be heard on appeal to complain about being awarded these assets when he acquiesced to the same. *See, e.g.*, *Jasper v. State*, 477 N.W.2d 852, 856 (Iowa 1991) (noting a litigant "cannot deliberately act so as to invite error and then object because the court has accepted the invitation"); *Odegard v. Gregerson*, 12 N.W.2d 559, 562 (Iowa 1944) (same).

E.     Visitation

Mark argues the visitation time provided to him in the decree is inadequate. Upon our de novo review, we disagree. "Liberal visitation rights are in the best interests of the children" and children "should be assured the opportunity for the maximum continuing physical and emotional contact with *both* parents." *In re Marriage of Ruden*, 509 N.W.2d 494, 496 (Iowa Ct. App. 1993); *accord* Iowa Code § 598.41(1)(a). "Although liberal visitation is the benchmark, our governing consideration in defining visitation rights is the best interests of the children, not those of the parent seeking visitation." *In re Marriage of Brainard*, 523 N.W.2d 611, 615 (Iowa Ct. App. 1994).

The decree provides Mark with visitation every other weekend from Friday afternoon through Sunday evening, three-and-one-half hours one weeknight per week, alternating holidays, and two weeks in the summer. Mark and Misha struggle to interact civilly with each other, and a visitation schedule with frequent contact between the two would undoubtedly be detrimental to the children. The separation and dissolution have been fraught with conflict—both parties alleged abuse during these proceedings and used property as leverage against the other. Of particular note is the parties' inability to drop off and pick up the children without conflict. The record discloses multiple instances of such conflict. Furthermore,

Mark and Misha are unable to communicate with each other. They have been unable to communicate about the children's activities and well-being. Throughout the marriage, Misha acted as primary caretaker for the children. She scheduled the children's doctor appointments and primarily provided them with transportation. Furthermore, Mark lived in Minnesota for an extended period of time during the marriage, visiting the children only on weekends. "[S]tability and continuity of caregiving are important factors that must be considered in custody and care decisions." *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007). Finally, the children prefer to spend their time with Misha; spending time in Mark's care causes them anxiety. The record also reflects that Mark has not been supportive of the children's relationship with Misha.

Because of these reasons, the court's visitation schedule did not provide inadequate contact between Mark and the children. The court's schedule allows the children to remain in a stable environment with Misha continuing as the primary caregiver while allowing the children to continue their relationship with Mark. We affirm the district court's visitation schedule.

F. Attorney Fees

Mark challenges the district court's award of attorney fees in favor of Misha in the amount of $20,000. "We review this award for an abuse of discretion." *See In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). This is our most deferential standard of review. *See State v. Roby*, 897 N.W.2d 127, 137 (Iowa 2017). "Trial courts have considerable discretion in awarding attorney fees." *In re Marriage of Witten*, 672 N.W.2d 768, 784 (Iowa 2003) (quoting *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994)). The fees must be fair and reasonable

and whether they should be awarded depends on the respective abilities of the parties to pay. *Id.* Upon our de novo review of this highly contentious litigation, we are unable to say the district court abused its discretion in its attorney fee award. In any event, the court factored the award into the property distribution, and we conclude a vacation or any downward modification of the award would render the distribution inequitable. We affirm the award of attorney fees.

Finally, Misha requested an award of appellate attorney fees. An award of appellate attorney fees is not a matter of right but rests within this court's discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). In determining whether to award attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal. *Id.* In consideration of these factors, we decline to award appellate attorney fees to Misha. Costs on appeal are assessed equally between the parties.

## IV.  Conclusion

We modify the amount and duration of rehabilitative spousal support to $1000 per month for one year from the time the decree was entered, followed by $500 per month for six months. We modify Mark's child-support obligation under the decree to $910.81 per month. Given the limited duration of Misha's spousal-support award coupled with an anticipated increase in her income, we remand the matter to the district court for a determination of Mark's child-support obligation after his spousal-support obligation decreases to $500 per month. The foregoing support obligation shall apply to the duration between the entry of the decree and the time the district court enters an order identifying Mark's future support

obligation. We find correction or modification of Mark's temporary child-support obligation was not properly before the court, and the court's sua sponte retroactive modification of the temporary-matters order was therefore error. We therefore modify the decree to vacate the portions that retroactively modified Mark's child-support obligation under the temporary-matters order. We affirm the district court's property distribution in its entirety and the award of attorney fees in favor of Misha. We deny Misha's request for appellate attorney fees. Costs on appeal are assessed equally between the parties.

**AFFIRMED AS MODIFIED AND REMANDED.**