# IN THE SUPREME COURT OF IOWA

No. 18–1910

Filed May 1, 2020

**IN RE THE MARRIAGE OF ANDREA KAY MANN AND STEVEN ROBERT MANN**

Upon the Petition of
**ANDREA KAY MANN,**

      Appellee,

vs.

And Concerning
**STEVEN ROBERT MANN,**

      Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Dickinson County, Carl J. Petersen, Judge.

Appellee sought further review of the court of appeals opinion modifying the parties' dissolution decree. **DECISION OF COURT OF APPEALS AFFIRMED IN PART, REVERSED IN PART; DECISION OF THE DISTRICT COURT AFFIRMED.**

Matthew G. Sease of Sease & Wadding, Des Moines, for appellant.

Joseph L. Fitzgibbons of Fitzgibbons Law Firm, L.L.C., Estherville, for appellee.

**APPEL, Justice.**

In this case, we consider whether a spouse with a recent income history less than that of his spouse is entitled to an award of alimony under the facts and circumstances developed at trial. For the reasons stated below, we conclude that the spouse is not entitled to alimony.

## I. Procedural and Factual Background.

Steven and Andrea Mann were married in 2002. At the time of trial, Steven was forty-nine years old. Andrea was forty-one years old. The couple has two young children who were seven and three at the time of trial. Andrea has a bachelor's degree in business management from Augsburg University obtained prior to the marriage.

Steven began a lawn mowing business when he was twelve years old and engaged in lawn mowing his entire life. During the winter months, he has provided a snow removal service. During the marriage, Steven handled the day-to-day operations of his lawn mowing and snow removal business, while Andrea billed the clients.

From the beginning of the marriage, Steven's lawn mowing and snow removal generated income for the family. At the time of trial, however, Steven admitted that in two of the past three years, he has reported a loss in income on the parties' joint tax return. At time of trial, Steven testified he was struggling with sending bills to clients, and Steven admitted that there was a large accounts receivable for his business.

Andrea began working at Polaris Industries in Spirit Lake in 2004 as a payroll clerk. Andrea received regular promotions and worked her way up to the position of materials manager for the entire factory in 2017. As she rose in the ranks, so did her income. In her current role as material manager, Andrea makes approximately $118,000 per year plus full benefits and stock options.

The parties argued frequently about Steven's inability to earn money and send out bills to clients. The arguments sometimes turned physical. Steven testified that Andrea slapped him and kneed him in the groin. Andrea testified that Steven placed his hands around her neck. No party called the police, however, and there was no conviction of any crime associated with the parties' behavior toward one another. When Andrea filed her petition for dissolution, she obtained an ex parte injunction against Steven.

The parties were able to stipulate to the value of most of their property. The parties disputed custody of the children, with Steven seeking joint physical care, while Andrea stipulated to joint custody but rejected the notion of joint physical care.

After a trial, the district court entered its order in this case. The district court awarded the parties joint legal custody of the children but awarded physical care to Andrea. For purposes of calculating child support, the trial court assumed that Andrea's yearly income was $118,000 per year. While it was difficult to determine Steven's income based on current records, the district court concluded that Steven earned, or should be able to earn, $36,000 per year. As a result, Steven was ordered to pay child support of $614 per month pursuant to this court's child support guidelines.

The district court next turned to the question of property distribution. After listing the residence and resolving a handful of disputes regarding valuation of certain items, the district court divided the assets between the parties. After a cash equalization payment from Andrea to Steven, each party received assets valued at $359,316.

After making the property distribution, the district court turned to the question of whether Steven was entitled to alimony. The district court

canvassed the caselaw regarding alimony. The district court, citing *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976), noted that alimony is not an absolute right and depends upon the circumstances of each particular case. The district court, citing *In re Marriage of Francis*, 442 N.W.2d 59, 63 (Iowa 1989) (en banc), identified from our caselaw three types of alimony: rehabilitative, reimbursement, and traditional. With respect to traditional alimony, the district court noted the factors of "(1) the earning capacity of each party, and (2) their present standards of living and ability to pay balanced against their relative needs." *In re Marriage of Williams*, 449 N.W.2d 878, 883 (Iowa Ct. App. 1989). The district court declared, however, that the discretionary award of alimony could be awarded only after the court considered the factors listed in Iowa Code section 598.21A(1)(*a*)–(*j*) (2017).

The district court determined that the record did not support alimony for Steven. The district court held that Steven's employment circumstances over time had not changed but that Andrea, through her own determination, improved her earning capacity. The district court declared that under the circumstances, "[t]raditional alimony would not be appropriate based upon the length of the marriage and the earning capacity of both parties." The district court further declared that there was no basis for rehabilitative alimony or reimbursement alimony. As a result, the district court concluded that Steven would not receive an award of alimony.

Steven appealed. We transferred the case to the court of appeals. The court of appeals awarded Steven three years of alimony in the amount of $2395 per month. The court of appeals left the property distribution of the district court undisturbed. Andrea filed a petition for further review. We granted the petition.

When we grant further review, we may exercise our discretion in determining which issues to consider. *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 483 (Iowa 2012); *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 255 (Iowa 2012). We decline to address the property distribution issues raised in this appeal. Therefore, the ruling of the court of appeals on the property distribution stands. We consider on further review only the question of whether Steven is entitled to alimony.

Upon our de novo review, we conclude that Steven is not entitled to alimony on the record presented.

## II. Standard of Review.

Under Iowa Rule of Appellate Procedure 6.907, "Review in equity cases shall be de novo." On appeal, "We give weight to the factual determinations made by the district court; however, their findings are not binding upon [this Court]." *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015).

## III. Discussion.

### A. Positions of the Parties.

1. *Steven.* Steven asserts that the district court erred in failing to award him alimony. He asserts that a sixteen-year marriage is sufficient to support an award of traditional alimony. *See Schenkelberg*, 824 N.W.2d at 486 ("[The couple was] married for sixteen years, and thus, the length of the marriage merits support payments."); *Fenchel v. Fenchel*, 268 N.W.2d 207, 210 (Iowa 1978) (finding that, in the case of a sixteen-year marriage, alimony was justified).

Assuming the length of marriage was sufficient to support an award of traditional alimony, Steven asserts that the district court erred in finding that Steven has an earning capacity similar to Andrea. He claims that he has never generated near the income that Andrea currently earns.

He notes that during the past four years, Andrea reported income over $100,000 per year, while his income was never greater than $16,847 per year, with two years of losses of income.

Steven points out that at the hearing, Andrea asserted that Steven's income potential was $5000 per month, or $60,000 per year. The district court, Steven asserts, ultimately imputed an annual salary of $36,000 per year to Steven, compared to Andrea's $118,000 per year plus benefits and stock options. Steven thus argues that Andrea and Steven are on "opposite ends of the employment spectrum."

Steven argues that alimony is necessary to support his style of living developed during the course of the marriage. Steven asserts that at the time of their marriage, the parties had no assets. During the sixteen years of marriage, they accumulated a new worth in excess of $700,000. Under the circumstances, an award of alimony is appropriate to support his lifestyle.

Steven argues that the nature of the property distribution is a factor in support of granting alimony. He points out that a majority of the assets awarded to him are nonliquid and are nonrevenue generating. To the extent he was awarded liquid assets, the assets are mostly retirement funds that he cannot liquidate without penalty. He was also left with all of the parties' marital debts of $57,853.

On the level of spousal support, Steven points to our decision in *In re Marriage of Michael*, 839 N.W.2d 630, 632, 635–39 (Iowa 2013), which was more recently cited with approval in *Gust*, 858 N.W.2d at 412, where we approved alimony that amounted to 31% of the difference in income between the spouses. Using that figure as a benchmark, Steven asserts that alimony between $2395 per month and $3329 per month is justified.

Steven claims that Andrea has sufficient funds after payment of expenses to satisfy the alimony award.

2. *Andrea.* Andrea resists payment of alimony to Steven. In her brief, Andrea incorporates passages of the district court's order verbatim. Andrea notes that Steven's employment circumstances did not change over the course of the marriage and that he continued to be satisfied serving his clients. Despite the possibility of well-paying snow removal jobs in winter months, Andrea notes that Steven did not consider expanding his work to increase his income.

According to Andrea, the record did not suggest that his income was in any way limited by his attending to the needs of the children. She notes that even in the winter, when Steven was not working, the children were sent to daycare.

Andrea emphasizes the finding of the district court that "Steven did not sacrifice for Andrea to improve her earning capacity." Instead, Andrea notes that the district court found that her increase in income was a result of her own dedication to her employer and not due to any sacrifice by Steven. Andrea notes that Steven over the years was simply content to engage in his limited lawn mowing and snow removal business and made no effort to increase his income.

Andrea's brief closes with the following passage:

> The trial court did not feel compelled to reward Steven for the abuse that resulted in his removal from the marital home followed by his refusal to contribute to the support of his children and the household. Steven's shenanigans in clouding his income and accounts receivable value and attempting to use alimony as a bargaining chip for custody obviously prompted the trial court to find Steven's request for alimony to be meritless.

In addition to opposing an award of alimony, Andrea seeks an award of attorney fees and costs in this case.

**B. Analysis.**

1. *Overview of alimony.* We begin with a brief review of the legal framework for considering alimony issues in Iowa. The question of whether to award alimony is a matter of discretion and not a matter of right. *In re Marriage of Ask,* 551 N.W.2d 643, 645 (Iowa 1996). The district court has "considerable latitude" in fashioning or denying an award of spousal support. *In re Marriage of Benson,* 545 N.W.2d 252, 257 (Iowa 1996) (en banc); *see also In re Marriage of Schenkelberg,* 824 N.W.2d at 486; *In re Marriage of Anliker,* 694 N.W.2d 535, 540 (Iowa 2005).

Whether to award alimony depends on the peculiar facts of each case. *Fleener,* 247 N.W.2d at 220. In determining whether to make such an award, the legislature has directed that we consider all of the following relevant factors:

> *a.* The length of the marriage.
>
> *b.* The age and physical and emotional health of the parties.
>
> *c.* The distribution of property made pursuant to section 598.21.
>
> *d.* The educational level of each party at the time of marriage and at the time the action is commenced.
>
> *e.* The earning capacity of the party seeking maintenance, including educational background, training, employment skills, work experience, length of absence from the job market, responsibilities for children under either an award of custody or physical care, and the time and expense necessary to acquire sufficient education or training to enable the party to find appropriate employment.
>
> *f.* The feasibility of the party seeking maintenance becoming self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage, and the length of time necessary to achieve this goal.
>
> *g.* The tax consequences to each party.
>
> . . . .

> *j.* Other factors the court may determine to be relevant in an individual case.

Iowa Code § 598.21A(1). Notwithstanding the laundry list of factors we are required to consider, orders need only mention those criteria relevant to the particular case. *Id.* § 598.21A(2).

In reviewing a district court's ruling on alimony, we recognize that the district court has had an opportunity to evaluate the testimony of witnesses. *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984). We do make two observations in addition to this conventional summary of our caselaw regarding alimony. First, in this case, domestic abuse was a factor to be considered in connection with the question of joint physical care of the couple's children. Andrea asks in this appeal that we consider the history of domestic abuse in making our determination of whether Steven is entitled to alimony.

Under our caselaw, however, spousal abuse is not relevant on the question of alimony. *See In re Marriage of Goodwin*, 606 N.W.2d 315, 323–24 (Iowa 2000); *In re Williams' Marriage*, 199 N.W.2d 339, 345 (Iowa 1972). As explained in *Goodwin*, the court declared that the Iowa legislature rejected the notion of fault in its domestic abuse statute enacted in 1970. 606 N.W.2d at 324. We decline the invitation in this case to depart from our established precedent and permit domestic abuse to be a factor in the question of whether to award alimony. Any such policy change is a matter for the legislature.[1]

---

[1]The California Legislature recently amended its dissolution statute to provide a rebuttable presumption that alimony not be provided to a party if that party has been subject to a criminal conviction for an act of domestic abuse within the last five years. *See* Cal. Fam. Code § 4325 (West 2020). The change has triggered commentary, both in favor and opposed. *See, e.g.*, Sarah Burkett, *Finding Fault and Making Reparations: Domestic Violence Conviction as a Limitation on Spousal Support Award*, 22 J. Contemp. Legal Issues 492, 497 (2015) (endorsing the change); Stasia Rudiman, *Domestic Violence as an Alimony Contingency: Recent Developments in California Law*, 22 J. of Contemp. Legal Issues 498, 510 (2015) (resisting the change).

Second, in considering alimony, district courts should consider changes in the tax treatment of alimony in making awards. Iowa Code § 598.21A(1)(*g*). Under recently enacted federal tax law, alimony payments are no longer tax deductible and are not considered taxable income to the person receiving them. Tax Cuts and Jobs Act, Pub. L. No. 115–97, § 11051, 131 Stat. 2054, 2089 (2017) (repealing 26 U.S.C. § 215). As a result, the economic impact of alimony on the paying spouse is greater today than it has been in the past. Prior caselaw allocating percentages of income for alimony thus have less economic impact on the payor than the allocation of a similar percentage of income to alimony would have today under current tax law. Thus, by way of example, in *Gust,* we awarded alimony that amounted to 31% of the difference in income between the spouses. 858 N.W.2d at 412. If the case were before us today on the same facts, a 31% award would have a larger impact on the payor spouse than in *Gust* because of the tax change.

2. *Application of principles to facts.* Based on our review of the entire record, we make a number of factual observations. There is no question that Andrea has been much more successful that Steven in generating income. The district court found that Andrea could be expected to earn $118,000 per year and Stephen $36,000. We could quibble with the edges here, but the general thrust of the district court's conclusion regarding the comparative earning capability of the spouses is clearly correct. It likely will be a challenge for Steven to maintain the lifestyle to which he is accustomed on the income capacity attributed to Steven by the district court. Iowa Code § 598.21A(1)(*f*).[2]

---

[2]Remarkably, in his Affidavit of Financial Status submitted in connection with the dissolution, Steven stated he had income and no expenses. He also entered zeros for Andrea's income. It is unlikely that Steven will have no income and no expenses after the dissolution, but he made it impossible for the district court, and for us, to determine

The district court suggested that alimony was not appropriate based on the length of the parties marriage and the differences in income. *Id.* § 598.21A(1)(*a*). We do not entirely agree. A sixteen-year marriage can, and has, supported alimony awards when the facts and circumstances support the award. *Schenkelberg*, 824 N.W.2d at 486–87. Further, marked disparity of income is a relevant factor in considering the question of an award of alimony. *Gust*, 858 N.W.2d at 411–12.

In addition, Steven does not have a college education, a factor that cuts in favor of alimony in that he does not have the same prospect of professional or career advancement ordinarily available to college graduates. Iowa Code § 598.21A(1)(*d*). Finally, with her significant income and relatively modest expenses, Andrea could likely afford alimony in some amount to Steven. *Id.* § 598.21A(1)(*j*). But there are other countervailing factors that bear against Steven on the question of alimony.

First, the record reveals that Steven did not enhance the earning capacities of Andrea by sacrificing his ability to earn income from his lawn mowing and snow removal business. Andrea received her bachelor's degree prior to the marriage. She worked at various jobs until 2004, when she was hired by Polaris. There, she received multiple periodic promotions, rising to the level of production manager after more than a decade of successful employment. While her career has been highly successful, there is nothing in the record to suggest that Andrea's rise in the ranks of the company was attributable to the contributions of Steven.

Second, Steven did not materially sacrifice his economic opportunities to manage the household or provide domestic services for the family. *See In re Marriage of Becker*, 756 N.W.2d 822, 826–27

---

with any precision the amount of those expenses. Steven's zero-laced affidavit was filed by Steven shortly before trial was scheduled on July 13, 2018.

(Iowa 2008); *In re Marriage of Geil*, 509 N.W.2d 738, 742 (Iowa 1993). He did not sacrifice his lawn mowing and snow removal business to stay home to raise the children. *See* Iowa Code § 598.21A(1)(*e*). Although he was not employed full time, the children attended daycare, even in the winter months when Steven was not regularly mowing lawns and only removing snow on an as-needed basis. Indeed, contrary to the traditional pattern that often emerges, the record indicates that at all times during the marriage, Andrea was not only the primary bread winner but was primarily responsible for preparing meals, attending to the needs of the children, and managing the household. It appears that Steven was both economically underemployed and domestically underemployed.

We do not suggest that Steven did nothing to assist in child rearing. Because of his flexible schedule, he was primarily responsible for taking children to and from daycare. He also supervised the children when Andrea was on occasional overnight work trips or came home late from work.

But Steven could have expanded his economic prospects or domestic contribution if he so chose. Instead of sacrificing economic potential for the benefit of the family, Steven, year after year, continued his modest business throughout the course of the marriage that, just like prior to his marriage, left him with ample free time. He seems to have been content with the less strenuous and convenient work schedule. His approach to the business has been less than disciplined, as shown by the substantial accounts receivable balance in his business at the time of trial in this matter. It seems fair to say that Steven was not a full partner in the collective economic engine that propelled the family forward.

In contrast, Andrea has aggressively pursued employment opportunities. She has been quite successful, even commendably so. As

the district court found, however, her economic success has been a result of her own efforts, not those of Steven. The substantial difference in income between Andrea and Steven was in large part a product of the individual choices each spouse made rather than mutual sacrifices or contributions made to the family.

Third, to the extent that we might nonetheless consider an alimony award of some kind, we must also consider the property settlement. Iowa Code § 598.21A(1)(*c*). As part of the property settlement in this case, Steven, at forty-seven years of age received assets valued at $359,316. These assets must have accrued disproportionately as a result of Andrea's successful employment and not from Stephen's modest business. Thus, Steven has indirectly but substantially benefited from Andrea's success in the equal division of substantial marital property. Having received substantial benefit from Andrea's industriousness in the property settlement, equity does not demand that Andrea contribute more to Stephen's postmarriage economic wellbeing through an award of alimony.

Similarly, Steven also got the benefit of Andrea's higher income in the setting of his child support obligations under this court's child support guidelines. Had Andrea's income been lower, Steven's contribution for child support would have been more substantial.

Under all the facts and circumstances, we do not think the district court acted unfairly in declining to award Steven alimony. We have generally identified three types of alimony: traditional, rehabilitative, and reimbursement. *Becker*, 756 N.W.2d at 826. The district court reasonably concluded he did not qualify for rehabilitative or reimbursement alimony. Further, the court concluded that traditional alimony was not appropriate in light of the relationship of the parties and the nature of the marriage. To the extent Iowa Code section 598A.21A(1)(*e*) directs us to consider time

and expenses necessary to acquire sufficient education or training to enable the party to find appropriate employment, we note that such transitional alimony is usually appropriate in the context of a traditional marriage where a spouse has surrendered economic opportunities and needs a period of time to get retooled to enter the work force. *Becker*, 756 N.W.2d at 826–27. Further, to the extent Steven has had difficulty billing his accounts receivable, resolution of the problem is more likely a three-hour training proposition, not a three-year enterprise.

For all of the above reasons, based on a totality of all the relevant factors, we conclude that the district court properly declined to award Steven alimony in this case.

3. *Appellate attorney fees and costs.* This court retains the discretion to award appellate attorney fees and costs in these kind of appeals. We decline to make such an award in this case.

**IV. Conclusion.**

For the above reasons, the ruling of the court of appeals is affirmed in part and reversed in part. The order of the district court is affirmed.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART, REVERSED IN PART; DECISION OF THE DISTRICT COURT AFFIRMED.**

All justices concur except McDermott, J., who takes no part.